**Earl V. DUNNINGTON, III, Petitioner,**

v.

**DEPARTMENT OF JUSTICE, Respondent.**

**No. 90–3427.**

United States Court of Appeals, Federal Circuit.

Feb. 27, 1992.

Rehearing Denied May 5, 1992.

Anne M. Wagner, Staff Counsel, American Federation of Government Employees, AFL–CIO, of Washington, D.C., argued for petitioner. With her on the brief was Mark D. Roth, General Counsel.

Steven J. Abelson, Attorney, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for respondent. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and James M. Kinsella, Asst. Director. Of counsel was Tamara Phipps, Dept. of Justice, of Washington, D.C. Also on the brief was Gregory J. Ball, Dist. Counsel, Dept. of Justice, of counsel.

Before RICH, MICHEL and PLAGER, Circuit Judges.

PLAGER, Circuit Judge.

This case presents, seemingly for the first time in this court, the question of what constitutes reasonable cause for summary indefinite suspension of a government employee. The issue is not without difficulty.

The Department of Justice (DOJ) indefinitely suspended petitioner Earl V. Dunnington, III (Dunnington) without pay from his position as a Border Patrol Agent following Dunnington's arrest on charges of sexual abuse of a child. The suspension took effect 14 days after it was proposed. Dunnington objected on the grounds, among other things, that he did not receive the 30 day advance notice to which he claimed he was statutorily entitled, and that therefore he was entitled to back pay for the period of the unlawful suspension.

This dispute was heard on three separate occasions by the Merit Systems Protection Board (MSPB), with alternating results (first sustaining the DOJ action, then reversing the action, and finally sustaining the action). The final outcome, in the agency's favor, was that the probable cause determination of the magistrate in issuing an arrest warrant in combination with the fact of the arrest did constitute reasonable cause for the agency's action, *Dunnington v. Dep't of Justice*, 45 M.S.P.R. 305 (1990) (hereinafter *Dunnington 3*), and that a sufficient nexus existed between Dunnington's activities and the efficiency of the service. *Dunnington v. Dep't of Justice*, No. DA07528610554 (M.S.P.B. Nov. 25, 1986) (hereinafter *Dunnington 1*). Dunnington appeals here. We affirm.

## BACKGROUND

Dunnington was employed as a Border Patrol Agent with the Department of Justice, Immigration and Naturalization Service. On May 31, 1985, four criminal complaints were filed against Dunnington and four arrest warrants issued. On June 4, DOJ informed Dunnington that in light of the complaints and warrants it proposed indefinitely suspending Dunnington. On June 11, Dunnington was indicted on four counts relating to sexual relations with a child. On June 17, DOJ made the decision to indefinitely suspend Dunnington effective the following day—14 days after DOJ first proposed the suspension.

Dunnington argues that 5 U.S.C. § 7513(b)(1) (1982) requires that he receive at least 30 days advance written notice of an adverse action or that there be "reasonable cause" to believe he committed a crime for which he could be sentenced to imprisonment. Because he did not receive 30 days notice and because there was no reasonable cause, as he believes that term is used in § 7513(b)(1), Dunnington argues that his suspension was improper. Dunnington ultimately resigned from the Border Patrol and now seeks back pay for the period between his allegedly improperly imposed indefinite suspension and his resignation.

### A. Notice Requirement for Imposing Indefinite Suspensions

██ When an agency takes an adverse action against an employee, including the suspension of an employee without pay, the action is subject generally to the provisions of 5 U.S.C. §§ 7501–7514 (1982). The statute provides that if a suspension is to be for less than 14 days, the employee is entitled to "advance written notice stating the specific reasons for the proposed action." 5 U.S.C. § 7503(b)(1). It does not specify what is meant by "advance written notice" in terms of a number of days.

On the other hand, if a suspension is to be for more than 14 days (see 5 U.S.C. § 7512(2)), the statute specifies that

> [a]n employee against whom an action [e.g., the suspension] is proposed is entitled to *at least 30 days' advance written notice*, unless there is *reasonable cause* to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action.

5 U.S.C. § 7513(b)(1) (emphasis added). Thus, when more serious adverse actions are contemplated, absent reasonable cause the employee is statutorily entitled to at least a 30 day notice period—a period that does not begin until the employee is made aware of the specific reasons for the action proposed—giving the employee this period of time to consider a response.

It is unclear from the statute if §§ 7511–14 were intended to apply only to definite term suspensions or if they were to encompass indefinite suspensions as well. This court, this court's predecessor, and the MSPB have, at least tacitly, applied the requirements of § 7513 to indefinite suspensions. *See, e.g., Wiemers v. Merit Systems Protection Bd.*, 792 F.2d 1113 (Fed. Cir.1986); *Jankowitz v. United States*, 209 Ct.Cl. 489, 533 F.2d 538 (1976); *Martin v. Dep't of Treasury*, 10 MSPB 568, 12 M.S.P.R. 12 (1982). We see no reason to stray from this course.

### B. Other Requirements for Imposing Indefinite Suspensions

██ It follows that all of the requirements of § 7513, including the 30 day no-

tice requirement, apply to indefinite suspensions. Section 7513 contains a number of other substantive and procedural requirements, including the requirement that the imposition of an indefinite suspension promote the efficiency of the service. 5 U.S.C. § 7513(a). Additionally, like all such actions, the penalty must be shown to be reasonable. *Martin*, 12 M.S.P.R. at 19. *See Douglas v. Veterans Admin.*, 5 MSPB 313, 5 M.S.P.R. 280 (1981).

## C. The MSPB's Rulings

On appeal to the MSPB, the case was first heard by an MSPB Administrative Judge (AJ). The AJ began her analysis by noting that DOJ had the four criminal complaints and arrest warrants before it at the time it imposed the suspension.[1] *Dunnington 1* at 3. The AJ ruled that this was sufficient to give DOJ reasonable cause to believe that Dunnington had committed a crime and that a 30 day advance written notice of the action was not required. *Id.* The AJ also found a nexus between the action of DOJ and the efficiency of the Border Patrol, noting that in his position, Dunnington "frequently worked alone and apprehended female aliens, including minors." The AJ concluded that DOJ's action against Dunnington promoted the efficiency of the service and was reasonable.

Subsequently, the Board granted Dunnington's petition for review and reversed the initial decision of the AJ. *Dunnington v. Dep't of Justice*, 36 M.S.P.R. 122 (1988) (hereinafter *Dunnington 2*). In *Dunnington 2*, the MSPB found that DOJ lacked reasonable cause to believe Dunnington had committed a crime for which a sentence of imprisonment could be imposed

because DOJ relied solely on the complaints and the arrest warrants in reaching its decision[2] and did not conduct any investigation of its own. The MSPB concluded that DOJ had "suspended [Dunnington] indefinitely based only on his arrest for egregious misconduct." *Dunnington 2* at 125. Thus, the action of suspension on less than 30 days advance written notice violated the notice requirement of § 7513(b)(1). The MSPB in *Dunnington 2* did not address the issue of nexus.

The Director of OPM then petitioned for reconsideration, which was granted by the Board. After further consideration, the Board vacated *Dunnington 2* and sustained the indefinite suspension. *Dunnington 3* at 123. The MSPB stated that prior cases establish that an agency does have reasonable cause to take an action against an employee when the employee is arrested and thereafter held by a magistrate for further legal action, or indicted by a grand jury. *Martin*, 12 M.S.P.R. at 19 n. 3 (*quoting* former Federal Personnel Manual Supp. 752–1, S5–3.b.(3) (1972)). In this light, the MSPB ruled that, if reasonable cause exists when an employee is arrested without a pre-arrest judicial determination of probable cause but there is a post-arrest determination, then reasonable cause must also exist when there is a pre-arrest determination of probable cause and the employee is arrested. The MSPB found no basis for "making a distinction between pre-arrest and post-arrest judicial determinations" and that

the probable cause determination by the magistrate issuing an arrest warrant is an additional circumstance which togeth-

---

1. This information was also before DOJ at the time the suspension was *proposed* on June 4. The record reflects that subsequently an indictment was filed against Dunnington on June 11 and his suspension was not effected until June 17th. The MSPB noted in *Dunnington 2* at 125 that "while the agency here submitted copies of the indictments upon appellant's refiling of his appeal, there is nothing in the record to suggest that the agency relied on them in effecting the suspension." This raises the question of whether, on appeal, the indictment might properly be weighed by this court in determining whether

the *final* decision was based upon "reasonable cause to believe the employee has committed a crime...." 5 U.S.C. § 7513. *Compare Jones v. Gov. Printing Office*, 11 MSPB 606, 13 M.S.P.R. 365, 368 (1982), with *Larson v. Dep't of Navy*, 22 M.S.P.R. 260, 262 (1984). Resolution of this question is not necessary, since, as we explain, the decision here can be sustained on the basis of the record at the time the suspension was proposed.

2. *See supra* note 1.

er with the fact of the arrest constitutes reasonable cause.

*Dunnington 3* at 125–26. Therefore, the MSPB found, action against Dunnington on less than 30 days advance notice was proper under the reasonable cause exception of § 7513(b)(1).

## DISCUSSION

To sustain DOJ's indefinite suspension of Dunnington on less than the statutorily required 30 day notice, DOJ must have had reasonable cause to believe that Dunnington had committed a crime for which a sentence of imprisonment could be imposed, 5 U.S.C. § 7513(b)(1); and that the suspension would promote the efficiency of the service. 5 U.S.C. § 7513(a). To show that the suspension promotes the efficiency of the service, DOJ must establish a nexus between Dunnington's alleged acts of misconduct and the efficiency of the service. *Hale v. Dep't of Transp., Federal Aviation Admin.,* 772 F.2d 882, 885 (Fed.Cir. 1985).

■ On appeal, this court upholds decisions of the MSPB unless the decision is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Covington v. Dep't of Health and Human Services,* 750 F.2d 937, 941 (Fed.Cir.1984).

### A. 30 Day Notice Requirement of § 7513(b)(1)

MSPB cases addressing the question of when an agency may suspend with less than 30 days notice are at best unclear, and at worst in conflict. *Compare Martin v. MSPB,* 10 MSPB 568, 12 M.S.P.R. 12 (1982) and *Jones v. Gov't Printing Office,* 11 MSPB 606, 13 M.S.P.R. 365 (1982) *with Froehlich v. Dep't of Treasury,* 21 M.S.P.R. 265 (1984) and *Larson v. Dep't of Navy,* 22 M.S.P.R. 260 (1984).[3] The two Board opinions in this case, taking opposite positions on the same facts, illustrate the problem. Our cases and that of our predecessor court do not definitively deal with the issue. We take the opportunity to clarify this matter for future guidance.

The rule we announce today flows logically from *Cooper v. United States,* 226 Ct.Cl. 75, 639 F.2d 727 (1980). In that case, the adverse action by the agency (removal) was based on a Defense Investigative Service report which summarized several instances of sexual misconduct charged against the individual by local authorities. On appeal, our predecessor court noted that the Government relied solely on the DIS report, which in turn was based on reports from other police sources. The court further noted that the Government made no attempt to go beyond the arrest records; it undertook no independent fact-finding investigation. "DIS did not even deign to take the statement of a single witness ... the Government's failure to conduct an adequate investigation prior to plaintiff's removal was inexcusable." *Id.* at 730. The removal decision was not sus-

---

3. In *Froehlich,* 21 M.S.P.R. at 269, the MSPB held that the issuance of an arrest warrant, without more, was insufficient to establish reasonable cause. The warrant of arrest was based on possession of marijuana charges. In *Jones,* 13 M.S.P.R. at 368, a government employee was indefinitely suspended pending the outcome of criminal charges lodged against her arising from the stabbing death of her common law husband. The MSPB opined that at the time the agency proposed the suspension based on the fact of her arrest on charges of homicide the agency did not have reasonable grounds to suspend. However, subsequently there was a preliminary hearing before a superior court judge, at which time the court found that there was probable cause to believe she had committed the crime charged and ordered her held for grand jury action. This determination, the MSPB held, provided sufficient evidence to show the existence of reasonable cause to suspend. *Id.* In *Martin,* 12 M.S.P.R. at 21, the Customs Service employee was indefinitely suspended upon charges of unauthorized interception of oral communications, conduct prejudicial to the best interests of the service, and interfering with the rights of another. The MSPB upheld Martin's suspension, finding that the circumstances of the ongoing investigation, the issuance of various search warrants, and the supervisory responsibilities of the employee, were all sufficient to bring the case within the statutory standard. *See also Jankowitz v. United States,* 209 Ct.Cl. 489, 533 F.2d 538 (1976) (suit under the Back Pay Act; indefinite suspension based on indictment for bribery upheld).

tained.[4]

[4] *Cooper* properly recognizes that the rights of the individual must be protected from premature or unfounded governmental actions. At the same time, we must not lose sight of the purpose of the suspension provision. A summary suspension (one taken on less than 30 days notice) is an administrative decision taken to protect the public and agency personnel. *Thomas v. General Services Admin.*, 756 F.2d 86, 89 (Fed.Cir.), *cert. denied*, 474 U.S. 843, 106 S.Ct. 129, 88 L.Ed.2d 106 (1985). It is available only when there has been an allegation of a serious crime, and only when the misconduct alleged bears a sufficient relationship to the employee's duties in the agency to warrant the action as promoting the efficiency of the service. An indefinite suspension under those circumstances differs from a removal in that the suspension must be terminated within a reasonable time following resolution of the criminal charges. *Engdahl v. Dep't of Navy*, 900 F.2d 1572, 1578 (Fed.Cir.1990); *Martin*, 12 M.S.P.R. at 17.

To require in every case a full investigation by the agency prior to the agency's availing itself of the summary suspension provision might have adverse effects on both the agency and the employee. From the agency's viewpoint, it could deny the agency the benefits intended by the provision by unduly delaying action necessary to protect the public or the agency. From the individual's viewpoint, if the employee insisted on his administrative rights it could force a premature airing of the individual's defense in a pending criminal case; if he did not insist on his rights, it could be taken as a waiver thereof, or possibly even an admission of guilt. *See Engdahl*, 900 F.2d at 1577.

■ In an appropriate case, then, the agency must be able to act on the basis of the facts presented to it, without the necessity of an independent investigation of its own. However, those facts must be sufficient to meet the statutory test of reasonable cause, and the agency must take steps to assure that this is so. The problem arises when an employee is arrested, with or without a warrant, or charged with a crime by indictment or information, with or without arrest. Here, the agency is not itself the fact-finder, but the activities of third parties—law enforcement officials, Grand Jury, District Attorney, magistrate—provide the agency with the factual record for its analysis.

■ In the case before us, the AJ found that the agency, at the time it proposed the suspension, had before it the four criminal complaints and four warrants of arrest. In addition, the criminal complaints were supported by statements from the complaining witnesses. This, the AJ concluded, was sufficient to provide reasonable cause. The MSPB, on the first appeal, recharacterized the factual basis for the agency action: "The agency suspended appellant indefinitely *based only on his arrest* ...." *Dunnington 2* at 125 (emphasis added). The MSPB concluded that this was insufficient: "The agency conducted no investigation and has shown no ... [accompanying] circumstances surrounding appellant's arrest." *Id.*

On rehearing, the MSPB reversed itself. It held that the arrest warrants, issued by a magistrate presumably on the basis of probable cause, were equivalent to the probable cause hearing held after the fact of an arrest. The Board went on: "Stated another way, we find that the probable cause determination by the magistrate issuing an arrest warrant is an additional circumstance which together with the fact of the arrest constitutes reasonable cause." *Dunnington 3* at 125–26.

---

**4.** Of course, rare situations may arise in which the surrounding circumstances justify drawing an obvious inference from the sparse facts in the record. *See, e.g., Schapansky v. Dep't of Transp., FAA*, 735 F.2d 477, 486 (Fed.Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984) (Shortened seven-day notice prior to removal of air traffic controller following the August 1981 air traffic controller's strike; "Schapansky's unexplained absence during a well-known strike established reasonable basis for the agency to believe that he was engaged in such [strike] participation and thereby automatically established a reasonable basis for its belief that he had committed the crime of striking against the government.")

It is generally agreed that an arrest by police authorities does not, by itself, provide reasonable cause to believe that an employee has committed a crime for which imprisonment could result. Does the fact that an arrest warrant issued prior to the arrest change the outcome? If it does, it is not the arrest that matters but the issuance of the warrant—the additional act of sending enforcement officials to locate the subject of the warrant to carry out what the warrant authorizes does not add anything to the reasonable cause determination.[5] The fact of Dunnington's actual arrest is not relevant to the determination of reasonable cause.

The question posed to us by the MSPB's decision in *Dunnington 3* is, then, were the arrest warrants sufficient? In fact, there was much more before the agency than the arrest warrants. As the AJ noted, there were the criminal complaints, and the supporting statements from the complaining witnesses.

A charge of sexual abuse of a child is a serious charge. At the same time, it is, like many crimes which occur outside the public eye, more easily made than disproved. When a charge of criminal conduct arises in a context in which the credibility of key parties is necessarily in question—among other things, there was in this case an indication that the charges were initially proffered by an estranged spouse—the agency must assure itself that it has a sound basis for acting. This is particularly true if the agency depends on the knowledge and statements of other investigating agencies rather than its own. As the Supreme Court has said:

> Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of

documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy.

*Greene v. McElroy,* 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959).

■ Obviously, the best evidence of reasonable cause will be that determined by the agency after an appropriate investigation of the facts and circumstances of the alleged misconduct. But, for the reasons we have discussed, that may not always be possible, or the wisest course. In absence of its own investigation, the agency must determine whether it has enough to go on. As the cases make clear, the mere fact of an arrest by the police is not, in and of itself, sufficient to provide reasonable cause under § 7513(b)(1). At the other extreme, a formal judicial determination made following a preliminary hearing, or an indictment following an investigation and grand jury proceedings, would provide, absent special circumstances, more than enough evidence of possible misconduct to meet the threshold requirement of reasonable cause to suspend.

We are not prepared to conclude, however, that the issuance of an arrest warrant, presumably based on a finding of probable cause found by a magistrate, is the equivalent to more formal proceedings. The process by which arrest warrants are issued is typically *ex parte.* They are often based on information from confidential informers, or other sources not subject to testing for credibility. Given the reality of the manner in which arrest warrants are often issued, it is incumbent upon the agency when an arrest warrant is a major part of the case to assure itself that the surrounding facts are sufficient to justify summary action by the agency.

The facts of this case satisfy the test set forth here. In this case, when the agency had before it additional factual material culled from the complaints and supporting

---

**5.** It would not follow that reasonable cause does not exist in the case of an employee who, al-

though a warrant for arrest has issued, successfully eludes the arresting officers.

allegations, we cannot conclude that the MSPB's decision upholding the suspension was arbitrary or capricious or without substantial evidence in the record.

### B. Nexus Between Dunnington's Activities and Efficiency of the Service

 As previously noted, in order for the indefinite suspension to be validly imposed, a nexus must exist between the action taken in response to Dunnington's misconduct and the efficiency of the service.[6] In *Dunnington 1*, the Administrative Judge found that Dunnington, in his duties, was required to work alone in apprehending women and minors, that he had lost the confidence of his supervisors, and that he could not be trusted as a law enforcement officer given the nature of the pending criminal charges. *Dunnington 1* at 3. Thus, the AJ found a nexus between the offenses alleged and the efficiency of the service, *id.*, and that indefinitely suspending Dunnington promoted the efficiency of the service, *id.* at 4.

This finding was sustained by the Board. Appellant has not persuaded us that this finding is incorrect. Indeed, the record leaves little doubt that this finding is fully supported; there is no basis upon which to disturb it.

### CONCLUSION

The decision of the MSPB is affirmed.

*AFFIRMED.*

---

**6.** At the hearing, DOJ argued that Dunnington had failed properly to raise the issue of nexus in this appeal. We disagree. Our reading of Dunnington's brief is that he raised the issue of whether the evidence relating to his arrest alone, i.e., without any connection to his particular role in the Border Patrol, was sufficient to result in an adverse action.