FRIEDMAN, Senior Circuit Judge.
 

 The petitioners challenge the decision of the Merit Systems Protection Board (Board), sustaining their indefinite suspensions without pay from their jobs at the Norfolk Naval Shipyard. The suspensions followed the termination of their access to classified information, and were to continue until the agency determined whether to cancel their security clearances. After the agency had decided not to cancel the clearances, the petitioners were returned to their jobs. They seek back pay for the period of their suspensions.
 

 We uphold the suspensions, on the grounds that the petitioners have no property or liberty interest in access to classified material and that an agency may indefinitely suspend employees during an investigation into whether their security clearances should be terminated. Therefore, we affirm.
 

 I
 

 The petitioners Jones and McDaniel worked respectively as a guard and a police officer at the Security Office of the Norfolk Naval Shipyard. Both positions required security clearances, which they had.
 

 Following an interview in which the Navy informed the petitioners that it had been reported that they had used and possessed cocaine, the agency terminated their access to classified information. At the interview, both men were permitted to respond to the allegations. McDaniel denied the charge; Jones made no statement. The agency initiated an investigation to determine whether it should cancel the petitioners’ security clearances.
 

 The agency then gave each employee thirty days written notice of a proposed suspension “for an indefinite period until a final decision on your security clearance has been made.” The notice informed them that they could make personal and/or written replies, which they did. The agency suspended each employee, placing them in a “(non-duty, non-pay status) pending the completion of” the security clearance investigation.
 

 Fourteen months later, the agency made a favorable determination regarding their security clearance, “reinstated” their “access to classified information,” and restored them to their positions.
 

 The petitioners appealed their indefinite suspensions to the Board. The parties stipulated that the Navy afforded the petition
 
 *1225
 
 ers the procedural rights required by law when it indefinitely suspended them.
 
 See
 
 5 U.S.C. § 7513 (1988); 5 C.F.R. § 752.404 (1992).
 

 The Board upheld the suspensions. It ruled (1) that the pendency of the security clearance investigations was a proper basis for suspension pending completion of the investigation; (2) that the subsequent continuation of the petitioners’ security clearances did not require reversal of the indefinite suspensions and the award of back pay for the period of suspension; and (3) that the agency did not deny petitioners minimum due process.
 
 Jones v. Department of Navy, 48
 
 M.S.P.R. 680 (1991).
 

 II
 

 The petitioners contend that they were denied procedural due process in the termination of their access to classified information because the agency did not give them full information about the basis for such termination; that because access to such material was a condition of their continued employment, such termination necessarily would have resulted in their suspension from employment; and that their indefinite suspensions, therefore, were effected in violation of their constitutional rights.
 

 The argument fails because it rests upon a faulty premise. The petitioners did not have a liberty or property interest in access to classified information, and the termination of that access therefore did not implicate any due process concerns.
 
 Board of Regents v. Roth,
 
 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Although suspension without pay during the security clearance investigation caused the petitioners significant monetary loss, “to determine whether due process requirements apply in the first place, we must look not to the ‘weight’ but to the
 
 nature
 
 of the interest at stake.”
 
 Id.
 
 at 570-71, 92 S.Ct. at 2705-06.
 

 “[N]o one has a ‘right’ to a security clearance.”
 
 Department of Navy v. Egan,
 
 484 U.S. 518, 528, 108 S.Ct. 818, 824, 98 L.Ed.2d 918 (1988). A fortiori, there is no access “right” to classified documents. “[T]he protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it.”
 
 Id.
 
 at 529, 108 S.Ct. at 825. “To have a property interest ... a person ... must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.”
 
 Roth,
 
 408 U.S. at 577, 92 S.Ct. at 2709.
 

 “The grant of a clearance requires an affirmative act of discretion on the part of the granting official.”
 
 Egan,
 
 484 U.S. at 528, 108 S.Ct. at 824. As the court stated in
 
 Hill v. Department of Air Force,
 
 844 F.2d 1407, 1411 (10th Cir.),
 
 cert. denied,
 
 488 U.S. 825, 109 S.Ct. 73, 102 L.Ed.2d 49 (1988):
 

 The Executive Branch has constitutional responsibility to classify and control access to information bearing on national security. A security clearance is merely temporary permission by the Executive for access to national secrets. It flows from a discretionary exercise of judgment by the Executive as to the suitability of the recipient for such access, consistent with the interests of national security. The notion of an individual property right in access to the nation’s secrets — by definition a limitation on Executive discretion — is utterly inconsistent with those principles. Whatever expectation an individual might have in a clearance is unilateral at best, and thus cannot be the basis for a constitutional right.
 

 Id.
 

 Accordingly, no employee has a property “right” to a security clearance or access to classified information.
 
 Egan,
 
 484 U.S. at 528, 108 S.Ct. at 824;
 
 Dorfmont v. Brown,
 
 913 F.2d 1399, 1403 (9th Cir.1990),
 
 cert. denied,
 
 — U.S. —, 111 S.Ct. 1104, 113 L.Ed.2d 214 (1991);
 
 Jamil v. Secretary, Dep’t of Defense,
 
 910 F.2d 1203, 1209 (4th Cir.1990);
 
 Hill, 844
 
 F.2d at 1411;
 
 Williams v. Reilly,
 
 743 F.Supp. 168, 172 (S.D.N.Y.1990).
 

 
 *1226
 
 Nor does an employee have a “liberty” interest in a security clearance or access to classified information. An employee’s liberty interest centers on his concern for his reputation and good name.
 
 Bishop v. Wood,
 
 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). “A clearance does not equate with passing judgment upon an individual’s character. Instead, it is only an attempt to predict his possible future behavior____”
 
 Egan,
 
 484 U.S. at 528, 108 S.Ct. at 824.
 

 The Navy did not make public the allegation of the petitioners’ use of cocaine or the suspension of their security clearances.
 
 Doe v. Cheney,
 
 885 F.2d 898, 910 (D.C.Cir.1989) (agency actions do not stigmatize employee when agency did not make public accusations against employee that might damage his standing in the community). The petitioners had no liberty interest in their security clearance, since its loss did not reflect upon their characters.
 
 See Dorfmont,
 
 913 F.2d at 1403;
 
 Jamil,
 
 910 F.2d at 1209;
 
 Hill,
 
 844 F.2d at 1411;
 
 Williams,
 
 743 F.Supp. at 172.
 

 Ill
 

 As noted, the petitioners stipulated that the procedures the Navy followed in indefinitely suspending them — which included thirty days advance written notice and the opportunity to make written and/or oral responses — satisfied legal requirements.
 

 The petitioners apparently do not question that the Navy’s termination of access to classified information justified the agency in indefinitely suspending them pending its determination whether to cancel their security clearances. The regulations that govern indefinite suspensions provide that the suspensions may continue “pending investigation, inquiry, or further agency action.” 5 C.F.R. § 752.402(e) (1992). The Board previously had upheld indefinite suspensions to allow an agency to examine an employee’s conduct when it had reasonable cause to believe that the employee committed a crime punishable by imprisonment.
 
 Canevari v. Department of Treasury,
 
 50 M.S.P.R. 311, 315 (1991). We have sustained indefinite suspensions for that reason,
 
 Dunnington v. Department of Justice,
 
 956 F.2d 1151 (Fed.Cir.1992), and also, pending the results of psychiatric fitness-for-duty examinations.
 
 Mercer v. Department of Health & Human Servs.,
 
 772 F.2d 856 (Fed.Cir.1985);
 
 Thomas v. General Servs. Admin.,
 
 756 F.2d 86 (Fed.Cir.),
 
 cert. denied,
 
 474 U.S. 843, 106 S.Ct. 129, 88 L.Ed.2d 106 (1985).
 

 The same principle supports an indefinite suspension pending an agency’s determination of whether it should revoke an employee’s security clearance. In all three situations, the suspension “will promote the efficiency of the service,” 5 U.S.C. § 7513 (1988) — here by enabling the agency to determine whether its employees should have access to classified information before permitting them to return to the job.
 

 The petitioners challenge their indefinite suspensions, however, on the ground that they were invalid because they had no ascertainable duration or expiration date. The governing regulation imposes no such requirement. To the contrary, it states that an indefinite suspension places
 

 an employee in a temporary status without duties and pay pending investigation, inquiry, or further agency action. The indefinite suspension continues for an indeterminate period of time and ends with the occurrence of the pending conditions set forth in the notice of action which may include the completion of any subsequent administrative action.
 

 5 C.F.R. § 752.402(e) (1992).
 

 The indefinite suspensions of the petitioners satisfied that standard. In its notice of proposed indefinite suspension, the agency informed the petitioners that the suspensions would continue until the “completion of the final decision by the Central Adjudication Facility” on whether to continue or cancel their security clearances. It set forth in detail the circumstances under which and the time when the suspensions would terminate.
 

 The suspensions necessarily took this form, since at their outset, the Navy could not predict how long it would take to complete the security clearance investigations.
 
 *1227
 
 It was clear, however, that the suspensions would last only as long as necessary to perform that task.
 
 See Jarvis v. Department of Justice,
 
 45 M.S.P.R. 104, 109 (1990) (“at the time the suspension was effected, its exact duration, while not ascertainable, was temporary, as it was subject to a condition subsequent”);
 
 Canevari,
 
 50 M.S.P.R. at 315 (“An essential requirement of a valid indefinite suspension is that the suspension have a condition subsequent, such as the completion of a trial or an investigation, that will terminate the suspension.”).
 

 The duration of the suspensions was no more indefinite than other indefinite suspensions we have upheld. In
 
 Dunnington,
 
 956 F.2d at 1151, we upheld a suspension during the pendency of criminal charges against the employee. In
 
 Mercer,
 
 772 F.2d at 858, we sustained- a suspension pending a psychiatric evaluation of an employee’s ability to perform his job. In
 
 Thomas,
 
 756 F.2d at 87, we upheld a suspension that would “run until GSA decided whether to apply for disability retirement on petitioner’s behalf.”
 
 See also Jarvis,
 
 45 M.S.P.R. at 109. There were no specific final dates for the suspensions in any of those cases. Rather, the suspensions continued for the time necessary for the completion of the underlying proceedings that had engendered the suspension.
 

 The petitioners argue that the suspensions in this case were different from those in the other cases because here the agency did not explicitly state that it would investigate the petitioners’ security clearances to determine whether they should be can-celled. There was no doubt, however, that the agency would be conducting such investigations. The notice of proposed suspension stated that the suspensions would continue “until a final decision has been made on your security clearance.” The agency investigated the possible revocation of the petitioners’ security clearances and decided not to cancel them. The indefinite suspension of the petitioners’ security clearances was valid.
 

 IV
 

 The result in this case is harsh, since the petitioners were without pay for the fourteen months during which the investigation continued, but did not receive back pay after the agency rejected the allegations against them. As the law now stands, however, since we have’ upheld the suspensions, there is no basis upon which we could award them back pay for that period.
 
 See Wiemers v. Merit Sys. Protection Bd.,
 
 792 F.2d 1113, 1116 (Fed.Cir.1986). Perhaps Congress will consider the problem and decide to remedy the situation to permit the award of back pay to employees in that position for the period of their suspension.
 

 CONCLUSION
 

 The order of the Merit Systems Protection Board sustaining the petitioners’ indefinite suspensions is
 

 AFFIRMED.