George PARARAS–CARAYANNIS, Petitioner,

v.

**DEPARTMENT OF COMMERCE,** Respondent.

No. 93–3352.

United States Court of Appeals, Federal Circuit.

Nov. 10, 1993.

George Pararas–Carayannis, pro se.

Robert J. Krask, Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, DC, for respondent. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and Anthony H. Anikeeff, Asst. Director.

Before PLAGER, Circuit Judge, COWEN, Senior Circuit Judge, and SCHALL, Circuit Judge.

PLAGER, Circuit Judge.

George Pararas–Carayannis appeals the decision of the Merit Systems Protection Board (MSPB), Docket Number SE0752920321–I–1, 57 MSPR 353, sustaining the agency's decision [1] to indefinitely suspend him, without pay, pending the disposition of felony charges against him and his employer's determination regarding any future disciplinary action. We *affirm.*

**1.** The Administrative Judge (AJ) issued an initial decision on December 16, 1992. This decision became final on April 19, 1993 when the MSPB denied Mr. Pararas–Carayannis' petition for review.

## BACKGROUND

Petitioner has been employed by the agency as a Geophysicist with the National Weather Service (NWS), serving as director of the International Tsunami Information Center (ITIC) in Hawaii. The position entails broad duties such as public relations, research, and the publication of information regarding tsunamis.[2] In this capacity petitioner worked with national and international agencies as well as with scientists from numerous other countries.

On May 4, 1992 a criminal complaint was filed charging petitioner with violating 18 U.S.C. § 1956(a)(3) (1988), which states that anyone, with the requisite intent, who:

> conducts or attempts to conduct a financial transaction involving property represented by a law enforcement officer to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both.

The complaint, which was supported by an affidavit from Special Agent Jann Tompkins of the Criminal Investigation Division of the Internal Revenue Service, alleged that petitioner was involved in laundering money for escort/prostitution operations. Agent Tompkins discovered, from a confidential informant, that petitioner allegedly had been laundering prostitution proceeds through charge accounts maintained by his private corporation, The House of Emeralds. Petitioner purportedly provided the prostitution services with blank credit card slips with which to charge customers. The prostitution services would return the completed charge slips to petitioner who would disguise these prostitution payments as purchases from The House of Emeralds and process the credit card charges. After receiving payment from the credit card companies for the claimed purchases, petitioner allegedly retained 25–30% for his services and transferred the remaining 70–75% to the prostitution services.

**2.** A "tsunami" is a large ocean wave that is usually generated by an earthquake.

A government "sting" operation was set up. Between October 1991 and May 1992 petitioner met with persons unknown to him to be undercover officers, who had set up a fictitious prostitution service, and eventually laundered money for the officers in a manner similar to that described by the confidential informant. At one point during the sting operation petitioner allegedly received at his federal office one set of credit cards slips and a phone call concerning the illegal activity. Furthermore, the AJ noted that petitioner on occasion used his agency-provided cellular phone to conduct this illegal activity.

On May 5, 1992 petitioner was arrested at his federal office. On May 20, 1992, the federal grand jury issued an indictment charging petitioner with four counts of unlawful activity in violation of 18 U.S.C. § 1956(a)(3). Television and newspapers reported both the initial arrest and indictment identifying petitioner as an employee of the NWS.

In response to the criminal charges and subsequent indictment the following agency actions were taken. On May 14, 1992, petitioner's supervisor, Richard H. Hagemeyer, proposed to suspend petitioner indefinitely pending prosecution of the criminal charges. Petitioner responded to this notice by suggesting that he be placed on approved leave rather than be indefinitely suspended; the agency denied this request. On June 3, the agency sustained the proposal of Richard H. Hagemeyer and suspended petitioner, without pay, effective June 8, 1992.

The AJ, in the decision that gave rise to this appeal, upheld the agency action in an initial decision. As noted, this became final on April 19, 1993, when the MSPB denied petitioner's petition for review.

**3.** *See* 5 C.F.R. § 1201.56(a)(ii) (1993).

**4.** The statute in § 7513(b)(1) provides that an employee against whom an adverse action is proposed must be given "at least 30 days' advance written notice unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed." This provision clearly applies to proposed indefinite suspensions. *See* 5 U.S.C. § 7512(2) (1988). The statute, however, does not articulate the standard applicable to the decision to suspend, beyond requiring that it may be

## DISCUSSION

■ Under the Office of Personnel Management (OPM) regulations an "indefinite suspension" is defined as:

> the placing of an employee in a temporary status without duties and pay pending investigation, inquiry, or further agency action. The indefinite suspension continues for an indeterminate period of time and ends with the occurrence of the pending conditions set forth in the notice of action which may include the completion of any subsequent administrative action.

5 C.F.R. § 752.402(e) (1993). In order for the MSPB to sustain an indefinite suspension, the agency must establish by a preponderance of the evidence[3] that it had reasonable cause to believe the employee committed a crime for which imprisonment may be imposed.[4] In addition, the MSPB must prove that the suspension would promote the efficiency of the service. 5 U.S.C. § 7513(a) (1988). To show that a suspension promotes the efficiency of the service the agency must establish a nexus between petitioner's alleged acts of misconduct and the employee's job responsibilities. *See Dunnington v. Department of Justice,* 956 F.2d 1151, 1155 (Fed. Cir.1992); *Brown v. Department of Transp., Fed. Aviation Admin.,* 735 F.2d 543, 548 (Fed.Cir.1984).

■ Petitioner argues that the AJ's findings were clearly erroneous and not supported by substantial evidence. Specifically, petitioner contends that the MSPB improperly determined that a reasonable cause existed to believe that he committed a crime for which he was subject to imprisonment. Petitioner's primary argument seems to be that, since the Government agents conducted a

taken "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a). In cases such as this, decisions of the MSPB have applied the same standard to the agency's decision to waive notice and the agency's decision to suspend. *Canevari v. Department of Treasury,* 50 M.S.P.R. 311 (1991); *Martin v. Department of Treasury,* 10 MSPB 568, 12 M.S.P.R. 12 (1982); *see also Jones v. Department of Navy,* 978 F.2d 1223 (Fed.Cir.1992); *Dunnington v. Department of Justice,* 956 F.2d 1151 (Fed.Cir.1992)

sting without real prostitutes and pay-offs, no real crime was committed.

Petitioner next argues that there is no nexus between his alleged acts of misconduct and the efficiency of the service because the undercover officers initiated the meeting in petitioner's office and the calls on petitioner's office phones, and therefore these acts cannot be relied on to establish a nexus. Finally, petitioner challenges the MSPB finding that the agency proved the penalty was reasonable.

Petitioner's argument that the sting operation does not establish a violation of law reflects a misapprehension of the elements of the offense charged, and in any event is a substantive defense more properly brought in the criminal trial than in this administrative proceeding. The agency's reliance on the criminal charge, the detailed information in the affidavit, and the subsequent indictment was sufficient to support a conclusion that a reasonable cause existed to believe that petitioner committed a crime for which he was subject to imprisonment. This was not a case of an agency suspension based merely on an arrest. The agency had ample evidence of alleged misconduct, based on the Government's extensive investigation, on which to base its decision to suspend. *Dunnington,* 956 F.2d at 1157 ("[A]n indictment following an investigation and grand jury proceedings, would provide, absent special circumstances, more than enough evidence of possible misconduct to meet the threshold requirement of reasonable cause to suspend."); *Martin v. Department of Treasury,* 10 MSPB 568, 12 M.S.P.R. 12, 19 (1982) (grand jury indictment sufficient to show there is a reasonable cause to believe an employee has committed a crime for which imprisonment could be imposed). The MSPB so found, and that finding is fully supported by the record.

 As far as the efficiency of the service requirement is concerned, petitioner's voluntary use of both government property and time to carry on his illegal acts are sufficient to base an agency finding that the agency had lost trust and confidence in peti-

tioner; such loss of trust establishes the requisite nexus. *Sanders v. United States Postal Serv.,* 801 F.2d 1328, 1332 (Fed.Cir. 1986). In addition, petitioner's prominent position and the media coverage further support the agency's finding of a nexus. The reasonableness of a disciplinary action is a matter usually within the discretion of the agency;[5] we find that there is substantial evidence to support the agency's decision to indefinitely suspend petitioner.

For these reasons we hold that the decision of the MSPB is supported by substantial evidence, is not arbitrary, capricious, an abuse of discretion, or contrary to any law, rule or regulation. Accordingly, we affirm.

*AFFIRMED.*

---

**5.** *Id.* at 1333; *Parker v. United States Postal Serv.,* 819 F.2d 1113, 1116 (Fed.Cir.1987).