NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EDWARD J. LOCKWOOD,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2017-1489

---

Petition for review of an arbitrator's decision in FMCS No. 16-54073-7 by Charles G. Griffin.

---

Decided: February 21, 2018

---

STEPHEN E. JONES, Law Offices of Stephen E. Jones, P.C., Dallas, TX, argued for petitioner.

SEAN SIEKKINEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., REGINALD T. BLADES, JR.

---

Before TARANTO, BRYSON, and STOLL, *Circuit Judges*.

BRYSON, *Circuit Judge.*

Edward J. Lockwood petitions for review of an arbitration decision sustaining his indefinite suspension from employment with the Department of Veterans Affairs ("VA"). Because the arbitrator's decision is supported by substantial evidence and is in accordance with law, we affirm.

I

Mr. Lockwood is employed as a firefighter at the VA Medical Center near Alexandria, Louisiana. In July 2014, the VA police began an investigation into allegations that Mr. Lockwood was stalking female employees at the hospital facility.

As part of the investigation, a VA police officer filed a series of police investigative reports in October 2014. In the initial report, dated October 2, 2014, the officer recounted statements made by five individuals who reported that Mr. Lockwood had followed female employees around the medical campus; had entered an employee's vehicle uninvited; had engaged in unwanted physical contact with one employee; and had "followed other employees off campus to their residences" and "followed other female employees around town." Some of the women stated that Mr. Lockwood had made them feel uneasy and unsafe.

A follow-up report dated October 7, 2014, described additional allegations of stalking, including a statement from one employee that Mr. Lockwood's constant presence had caused her anxiety and fear. She added that she could not work late when needed "due to the fact that he is constantly around and watching her." In another report, the officer described an incident that he personally observed in which Mr. Lockwood sprinted toward an employee and then followed a few paces behind her before

abruptly leaving the area when he noticed the police officer's presence.

On October 15, 2014, two officers from the VA police department notified Mr. Lockwood that there was a warrant for his arrest and transported him to the local sheriff's office where he was booked on three counts of stalking. The VA police then turned their file over to the district attorney's office. The district attorney later charged Mr. Lockwood with four counts of stalking in violation of Louisiana Revised Statute 14:40.2.[1] The VA did not take any adverse employment action against Mr. Lockwood at that time.

In December 2015, a new allegation of stalking by Mr. Lockwood prompted a review of Mr. Lockwood's actions, which ultimately led to his suspension. On December 18, 2015, he was placed on paid administrative leave. Then, on January 12, 2016, the VA sent Mr. Lockwood a notice proposing to suspend him indefinitely "until the completion of the pending . . . judicial proceedings associated with the conduct referenced in paragraph 2."

Paragraph 2 of the notice stated the basis for the proposed indefinite suspension:

> In July of 2014, the VA Police received several complaints from female employees of the Alexandria VA Healthcare System (AVAHCS) alleging that you were stalking them on VA property. The VA Police investigated the allegations and on October 15, 2014, you were arrested by the AVAHCS

---

[1] The Louisiana statute defines stalking, in pertinent part, as the "intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress." A first conviction is punishable by a fine and term of imprisonment of 30 days to one year.

Police Department and were transported to the Rapides Parish Sheriff's Office where you were booked on three (3) counts of stalking. Following that arrest, you were charged with another count of stalking in connection with a fourth female employee at the Alexandria VA Health Care System. On October 21, 2014, you were formally charged with four counts of stalking under Louisiana Revised Statute 14:40.2, which is punishable by a mandatory prison sentence. Based on the information contained in the VA Police Investigative File, your subsequent arrest, and the nature of the charges pending against you, the Agency has reasonable cause to believe that you may have committed a crime for which a sentence of imprisonment may be imposed.

The notice continued: "Based on the seriousness of the offense and the incompatibility of the charges with your official duties . . . the alleged charges interfere with or adversely affect the Agency's mission as a whole. . . . Your continued presence at this facility poses a threat to its orderly operation." The proposed suspension was also supported by a memorandum from the Interim Health Care System Director, which addressed the 12 *Douglas* factors" bearing on the choice of penalty.[2] The memorandum concluded that Mr. Lockwood posed a "continued threat to female employees," that he "has had numerous counselings," that his conduct has "apparently spanned several years," that the potential for his rehabilitation

---

[2]    In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981), the Merit Systems Protection Board listed 12 factors to "be considered in determining the appropriate penalty for the subject employee." *Tartaglia v. Dep't of Veterans Affairs*, 858 F.3d 1405, 1408 (Fed. Cir. 2017).

was "seemingly poor," and that he could not operate effectively as a firefighter under these circumstances.

The notice of proposed indefinite suspension was issued pursuant to 5 U.S.C. § 7513. Under that statute, an agency may impose a serious penalty, such as indefinite suspension, "only for such cause as will promote the efficiency of the service." *Id.* § 7513(a). When a disciplinary action is proposed, an employee is normally entitled to 30 days' advance written notice "stating the specific reasons for the proposed action." *Id.* § 7513(b)(1). However, a proviso commonly referred to as the "crime provision" permits the agency to shorten that notice period when "there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed." *Id.*; *see* 5 C.F.R. § 752.404(d)(1). In this case, the VA invoked the crime provision and reduced the length of the written notice period from the normal 30-day period and provided him with the statutory minimum of seven days to respond to the charges. *See* 5 U.S.C. § 7513(b)(2).

Mr. Lockwood orally responded to the notice on January 20, 2016. Two days later, the VA sustained the proposed indefinite suspension, effective January 27, 2016. The suspension was set to last "until the completion of the law enforcement investigation and any related judicial proceedings pertaining to this conduct."

After an unsuccessful grievance proceeding, Mr. Lockwood invoked his right to arbitration. Following a hearing on August 18, 2016, the arbitrator upheld the suspension. In his opinion, the arbitrator rejected each of Mr. Lockwood's challenges to the agency's decision.

First, the arbitrator rejected Mr. Lockwood's contention that it was improper for the agency to invoke the crime provision, which reduced his written notice period to less than 30 days. The arbitrator found that the agency had satisfied the statutory requirement for invoking

the crime provision by showing that there was "reasonable cause to believe" that Mr. Lockwood had "committed a crime for which a sentence of imprisonment may be imposed." In particular, the arbitrator found that the agency had met the "reasonable cause" requirement based on "the 2014 VA police investigation, the recent stalking allegation," and the fact that Mr. Lockwood was "awaiting trial on stalking charges."

Second, the arbitrator rejected Mr. Lockwood's arguments that the VA failed to specify a condition subsequent that would terminate the suspension, since the suspension by its terms was set to end upon the completion of law enforcement and judicial proceedings in the stalking case. Third, the arbitrator ruled that the agency had shown that there was a nexus between Mr. Lockwood's misconduct and the efficiency of the service, as required by 5 U.S.C. § 7513(a). Finally, the arbitrator concluded that an indefinite suspension pending the resolution of the charges against Mr. Lockwood was the only reasonable penalty under the circumstances.

## II

This court reviews the decisions of arbitrators in federal employment disputes "in the same manner and under the same conditions as if the matter had been decided by the [Merit Systems Protection] Board." 5 U.S.C. § 7121(f). An arbitrator's decision must be affirmed unless it was not supported by substantial evidence, obtained without following procedures required by law, rule, or regulation, or was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 7703(c); *Martin v. Dep't of Veterans Affairs*, 412 F.3d 1258, 1264 (Fed. Cir. 2005).

Mr. Lockwood raises three arguments on appeal, none of which is persuasive.

A

First, Mr. Lockwood argues that the evidence cited by the VA was insufficient to satisfy the "reasonable cause" requirement for invoking the crime provision. Specifically, he contends that it was unreasonable for the VA to rely on the witness statements in the police reports, his arrest (purportedly pursuant to an arrest warrant), and the charges in the criminal information signed by an assistant district attorney. He focuses in particular on the fact that a copy of the arrest warrant was not in the record and that, in any event, there was no evidence to suggest that an arrest warrant "would have been based on anything other than the one-sided, internal DVA police investigation."

In support of his challenge to the arbitrator's "reasonable cause" finding, Mr. Lockwood relies on this court's decision in *Dunnington v. Department of Justice*, 956 F.2d 1151 (Fed. Cir. 1992). In that case, the Department of Justice proposed to indefinitely suspend Mr. Dunnington based on four criminal complaints and arrest warrants that were supported by statements from the complaining witnesses. *Id.* at 1153, 1156. The *Dunnington* court held that this evidence was adequate to find reasonable cause to invoke the crime provision, but it cautioned that "the mere fact of an arrest by the police is not, in and of itself, sufficient to provide reasonable cause under § 7513(b)(1)." *Id.* at 1157. The court further noted that arrest warrants are typically issued *ex parte*, "based on information from confidential informers, or other sources not subject to testing for credibility," and therefore "it is incumbent upon the agency when an arrest warrant is a major part of the case to assure itself that the surrounding facts are sufficient to justify summary action by the agency." *Id.* However, the court noted that "a formal judicial determination made following a preliminary hearing, or an indictment following an investigation and grand jury proceedings, would provide . . . more than enough evi-

dence of possible misconduct to meet the threshold re-
quirement of reasonable cause to suspend." *Id.*

Based on that language from *Dunnington*, Mr. Lock-
wood argues that the VA acted improperly by relying on
the VA investigation and the representation by the VA
police that he was arrested pursuant to a warrant. At
oral argument, Mr. Lockwood contended that "something
more than the internal police investigation was required"
and that *Dunnington* requires a third party to "objectively
look[] at the facts to say that there was a probable cause
determination."

*Dunnington* does not support Mr. Lockwood's argu-
ment. The *Dunnington* court was concerned about an
agency basing its reasonable cause determination exclu-
sively on fact-finding by third parties: "The problem
arises when an employee is arrested, with or without a
warrant, or charged with a crime by indictment or infor-
mation, with or without arrest. Here, the agency is not
itself the fact-finder, but the activities of third parties . . .
provide the agency with the factual record for its analy-
sis." 956 F.2d at 1156. The *Dunnington* court noted that
it was preferable for the agency to conduct its own inves-
tigation and satisfy itself that reasonable cause exists:
"Obviously, the best evidence of reasonable cause will be
that determined by the agency after an appropriate
investigation of the facts and circumstances of the alleged
misconduct." *Id.* at 1157.

That is precisely what the VA did in this case. The
VA police office received multiple allegations of unlawful
activity and conducted a three-month investigation in-
volving numerous witnesses and including observations
by a VA police officer. Following that investigation, Mr.
Lockwood was arrested and formally charged by the
district attorney's office. Rather than relying solely on
the fact-finding of the prosecutor's office, the VA found
reasonable cause based upon its own investigation.

Moreover, Mr. Lockwood's argument that the evidence should be discounted because it is "*ex parte*" and "one-sided," is unpersuasive:  an indictment returned by a grand jury is both *ex parte* and one-sided, but it provides "more than enough evidence of possible misconduct to meet the threshold requirement of reasonable cause." *Dunnington*, 956 F.2d at 1157.

Subsequent cases confirm that the VA's evidence met the reasonable cause threshold.  For example, in *Smart v. Merit Systems Protection Board*, 342 F. App'x 595 (Fed. Cir. 2009), this court suggested that a criminal information, standing alone, could be the basis for invoking the crime provision.  *Id.* at 598.  In *Pararas-Carayannis v. Department of Commerce*, 9 F.3d 955 (Fed. Cir. 1993), this court upheld the agency's invocation of the crime provision based on a criminal charge, an affidavit from the investigating officer, and a criminal indictment.  *Id.* at 956, 958; *see id.* at 958 ("This was not a case of an agency suspension based merely on an arrest."); *see also Senyszyn v. Dep't of Treasury*, 200 F. App'x 990, 992 (Fed. Cir. 2006) ("The deciding official considered the criminal complaint and the accompanying sworn statement detailing the charges against Mr. Senyszyn.  This was all the agency was required to do.").  Here, the VA's extensive investigation, the arrest, and the criminal charges provided reasonable cause sufficient to satisfy the crime provision. *See Cooke v. Soc. Sec. Admin.*, 125 F. App'x 274, 277 & n.2 (Fed. Cir. 2004) (affirming application of the crime provision after the agency conducted an initial investigation that led to a criminal complaint).  The arbitrator did not abuse his discretion in sustaining the VA's finding that there was reasonable cause to invoke the crime provision.[3]

---

[3]  Mr. Lockwood argues that "[i]n the absence of an actual warrant, the [VA's] reliance on a mere assertion

B

Mr. Lockwood next contends that in finding that the VA had reasonable cause to believe that Mr. Lockwood had committed a crime punishable by imprisonment, the arbitrator improperly relied on evidence not included in the January 12, 2016, proposal notice. Mr. Lockwood notes that the proposal notice only addressed the stalking incidents from 2014 and the investigation and criminal charges that stemmed from those incidents. It was error, he contends, for the arbitrator to refer to the December 2015 stalking allegation in the course of finding that the agency had reasonable cause to place Mr. Lockwood on indefinite suspension.

In support of his position, Mr. Lockwood cites *O'Keefe v. U.S. Postal Service*, 318 F.3d 1310 (Fed. Cir. 2002). In that case, the Merit Systems Protection Board upheld an agency's removal action and based its decision in part on evidence outside the scope of the notice of proposed removal. *Id.* at 1312–13. This court reversed, holding that "[o]nly the charge and specifications set out in the Notice may be used to justify punishment because due process requires that an employee be given notice of the charges

---

that a warrant existed is unreasonable." He adds that "[t]here was no evidence then, nor is there any now, that Mr. Lockwood was arrested pursuant to a judicial warrant." However, there is no applicable evidentiary rule prohibiting the agency from relying on a police report to establish the existence of a warrant. *See Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1364 (Fed. Cir. 1998) (hearsay rule inapplicable in Merit Systems Protection Board proceedings). In any event, this argument is beside the point, as neither the notice of proposed indefinite suspension nor the arbitrator's opinion relied on the existence of a warrant in addressing the issue of reasonable cause.

against him in sufficient detail to allow the employee to make an informed reply." *Id.* at 1315. The court added that "[b]y accusing O'Keefe of specific misdeeds that were not within the scope of the Notice of Proposed Removal, the Board has exceeded the scope of its review of the agency's decision." *Id.*

This case differs from *O'Keefe* in two important respects. First, *O'Keefe* involved a failure to give the employee notice of the charges on which his removal was based. In this case, by contrast, Mr. Lockwood was given notice of the 2014 stalking allegations, which were the charges that formed the basis for the VA's decision to suspend him. As the VA explained in response to Mr. Lockwood's grievance, the December 2015 "allegation of on-duty misconduct by Mr. Lockwood prompted a review of the employee's actions." Thus, the VA considered the December 2015 allegation, but only "[i]n conjunction with Mr. Lockwood's arrest and charges," and only in further support of its conclusion that there was reasonable cause to believe that Mr. Lockwood had committed a crime for which a sentence of imprisonment could be imposed.

Mr. Lockwood's argument that *O'Keefe* is like this case conflates two separate statutory provisions. First, the statute at issue in *O'Keefe* allows an agency to suspend an employee for more than 14 days only if the agency can prove the charged misconduct and only if the penalty proposed "will promote the efficiency of the service." 5 U.S.C. § 7513(a). Second, and separately, the statute at issue in this case allows an agency to initiate such a suspension without providing at least 30 days' written notice only if the agency has reasonable cause to believe the employee has committed an imprisonable crime. *Id.* § 7513(b)(1). The former addresses what is required to sustain a suspension, while the latter addresses what is required to waive the 30-day notice requirement. *See Perez v. Dep't of Justice*, 480 F.3d 1309, 1311 (Fed. Cir. 2007).

The *O'Keefe* case requires advance written notice of the charges that are used to support the disciplinary action under section 7513(a). However, *O'Keefe* does not require advance written notice of every piece of evidence addressed by an agency in assessing those charges, *Pope v. U.S. Postal Serv.*, 114 F.3d 1144, 1148 (Fed. Cir. 1997), and nothing in *O'Keefe* suggests that an employee must be given advance notice of every piece of evidence referred to by the Merit Systems Protection Board or an arbitrator in reviewing an agency's decision to invoke the crime provision under section 7513(b)(1).

Second, quite apart from the December 2015 allegation, the evidentiary basis for the arbitrator's decision sustaining the agency's finding of reasonable cause to believe Mr. Lockwood had committed a crime is compelling. As the arbitrator pointed out, that evidence includes the multiple incidents of stalking detailed in the 2014 police reports; the formal criminal charges brought against Mr. Lockwood; and the fact that those charges were still pending at the time the agency made its reasonable cause determination. The December 2015 stalking allegation, which did not result in criminal charges, was of far less significance for the reasonable cause determination than the 2014 allegations. Thus, unlike in *O'Keefe*, where the improperly considered evidence was critical to the removal decision, any impropriety in the arbitrator's reference to the 2015 stalking allegation was harmless error.

C

Finally, Mr. Lockwood argues that in sustaining the agency's "reasonable cause" determination, the arbitrator improperly relied on the fact that Mr. Lockwood "was awaiting trial on stalking charges." He contends that there was no evidence in the record to show that he was awaiting trial in January 2016.

The record is to the contrary.  The suspension notice of January 22, 2016, directed Mr. Lockwood to inform the agency "upon the completion of the law enforcement investigation and any related judicial proceedings" concerning the charged conduct, and Mr. Lockwood did not suggest in response that those proceedings had concluded.  In fact, the summary of Mr. Lockwood's oral response to the notice of proposed indefinite suspension reflects that on January 20, 2016, Mr. Lockwood acknowledged that two of the four charges against him remained pending.  In addition, the deciding official noted in his *Douglas* factors memorandum that as of January 22, 2016, two of the charges against Mr. Lockwood had been dismissed, but he was still awaiting trial on the remaining charges.  There was thus ample evidence in the record from which the arbitrator could find that as of the time of his suspension, Mr. Lockwood was still awaiting trial on at least some of the stalking charges.

No costs.

**AFFIRMED**