**Linda J. DARNELL (Rose), et al., Petitioners,**

v.

**DEPARTMENT OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION, Respondent.**

**Appeal No. 85–1578.**

United States Court of Appeals, Federal Circuit.

Nov. 26, 1986.

Richard J. Leighton, Mayberry and Leighton, Buchanan Ingersoll, Professional Corp., Washington, D.C., argued for petitioners. With him on brief were Risa D. Sandler and Margaret S. Dailey.

Hillary A. Stern, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. On brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Sandra P. Spooner, Commercial Litigation Branch, Dept. of Justice, Washington, D.C.

Before RICH and DAVIS, Circuit Judges, and COWEN, Senior Circuit Judge.

RICH, Circuit Judge.

This appeal is from the February 25, 1983, final decision of the Merit Systems Protection Board (board), in Nos. DC075281F1026 and DC075281F1097, sustaining the decisions of the Federal Aviation Administration (FAA) to remove petitioners Linda J. Darnell and Robert Martinkovic from their positions as air traffic controllers based on their participation in the illegal strike called in 1981 by the Professional Association of Air Traffic Controllers (PATCO) and for being absent without leave (AWOL) during the strike. Oral argument was heard on April 28, 1986. We affirm.

I. *Background and Issue Presented*

The background facts of the PATCO strike are set forth in the "lead cases" of this court in the air traffic controller litigation. *See Schapansky v. Department of Transportation, Federal Aviation Administration,* 735 F.2d 477 (Fed.Cir.), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984).

Petitioner Robert Martinkovic was on approved leave or regular days off from sometime in July, 1981, through August 9, 1981. He was charged with striking and being AWOL on August 10 after he failed to report for duty on his deadline shift that day.

Petitioner Linda J. Darnell (Linda J. Rose at the time of these events) was charged with striking and being AWOL from August 4 to 6, 1981, in a notice of proposed removal issued August 6, 1981.

Both petitioners replied in writing * to their notices of proposed removal within the proper seven-day period, notifying their facility chief of their intent to answer the charges in person, requesting an opportunity to review the evidence on which the charges were based and stating, inter alia, that "there is no basis to the charge that I have committed a crime for which a sentence of imprisonment may be imposed." Petitioners were removed before these

---

* These were identical "lawyer letters," obviously provided by PATCO, appointing a Mr. Ferman of PATCO to be their representative, and asserting various demands and legal propositions under statutes and regulations. Petitioners simultaneously signed and sent identical requests to FAA under the Freedom of Information Act for multifarious kinds of information and documents in three different categories. *See Dorrance v. DOT, FAA,* 735 F.2d 516, 518 (Fed.Cir. 1984).

written replies were received. Upon receipt, the agency reviewed the replies and determined and advised petitioners that they contained nothing to alter the removal decisions.

Petitioners appealed to the MSPB urging reversal of their removal on various technical grounds.

The broad issue presented by this appeal is whether petitioners' constitutional rights were abridged because the FAA did not give them "an explanation of the employer's evidence and an opportunity to present their side of the story" basing their arguments on *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). "Their side of the story" includes the specific arguments made to the MSPB which presumably would have been made to the agency including adequacy of the notice of proposed removal, failure of the FAA to prove the strike was still going on when they were AWOL, that the facility would not have permitted petitioners to work if they had tried, and the fact the FAA made a mistake in sending out a form letter saying they had made no reply.

## II. *Opinion*

In *Loudermill,* the United States Supreme Court stated that "[t]he opportunity to present reasons, either in person or in writing, why proposed action [to remove a public employee] should not be taken is a fundamental due process requirement." 470 U.S. at 546, 105 S.Ct. at 1495. All that is required to meet the essential requirements of due process "are notice and an opportunity to reply." *Id.* at 546, 105 S.Ct. at 1495. The August 6 and August 10, 1981, notices of proposed removal provided petitioners with detailed reasons for the adverse action and the location and the person to contact for review of the materials relied upon by the agency to support the removal action. The notices further stated that "you may reply to this notice personally, in writing or both, and furnish affidavits and other documentary evidence in support of your answer to me, within 7 calendar days after you receive this letter."

Hence, the agency clearly met the first two parts of the tripart test set forth in *Loudermill.* "The tenured public employee is entitled to [1] oral or written notice of the charges against him, [2] an explanation of the employer's evidence, and [3] an opportunity to present his side of the story." *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. Implicit in the third part of the test is that an *opportunity* be given an employee to present his side of the story; not a guarantee that the employee must present his story to the agency prior to removal. An *opportunity to present* is quite different from a *presentation in fact.*

Both petitioners replied in writing to these notices within the seven-day period. Unfortunately, the replies were not received by the agency until after the expiration of the seven-day period and after issuance of the removal letters. However, the agency reviewed the replies and determined and advised petitioners that they contained nothing to alter the removal decision. Hence the petitioners were afforded an opportunity to present their side of the story at the agency level and any errors committed by the agency were in the nature of procedural errors and were not errors of constitutional dimension.

In the context of criminal cases, the Supreme Court has stated that the Constitution entitles a criminal defendant to a fair trial, not a perfect one. *Delaware v. Van Arsdall,* —— U.S. ——, ——, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986); *United States v. Hasting,* 461 U.S. 499, 508–09, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983). Similarly, in the context of federal employee cases, the Supreme Court stated:

> We do not believe that Congress intended to force the Government to retain these erring employees solely in order to "penalize the agency" for nonprejudicial procedural mistakes it committed while attempting to carry out the congressional purpose of maintaining an effective and efficient Government.

*Cornelius v. Nutt,* 472 U.S. 648, 105 S.Ct. 2882, 2891, 86 L.Ed.2d 515 (1985) (citation and footnote omitted). Title 5 of the U.S.

Code, § 7701(c)(2)(A) provides specifically that the agency's decision should be overturned only "if the employee shows harmful error in the application of the agency's procedures." 5 C.F.R. § 1201.56(c)(3) defines "harmful error" as error which *might* have caused the agency to reach a different conclusion than the one reached. *Accord Cornelius v. Nutt,* supra.

Petitioner's standardized PATCO form "reply" to the agency's notice of proposed removal stated merely that "there is no basis to the charge that I have committed a crime for which a sentence of imprisonment may be imposed." Such a response cannot suffice to overcome a *prima facie* showing of strike participation. An unrebutted *prima facie* case of strike participation amounts to proof of the charges by a preponderance of the evidence. *Hale v. Department of Transportation,* 772 F.2d 882, 885 (Fed.Cir.1985).

The initial replies filed by petitioners in this case do not indicate that petitioners could or would have presented proof prior to the issuance of the removal letters that could have affected the FAA's factual conclusion that both petitioners participated in the strike. Thus, the perhaps premature issuance of the removal letters in the context of this case, where the written replies by the petitioners were considered by the agency after the fact and do not on their face give any indication that receipt of the replies prior to issuance of the removal letters could have affected the agency's underlying factual conclusion, was harmless error. Moreover, petitioners had a full opportunity to present their additional defenses at their *de novo* hearings before the board. None of the defenses were legally sufficient, and none was a defense which might invoke the *discretion* of the agency's deciding official not to remove them. Thus, they were not denied "the only meaningful opportunity to invoke the discretion of the decision-maker." *Loudermill,* 470 U.S. at 543, 105 S.Ct. at 1494. *Accord Smith v. U.S. Postal Service,* 789 F.2d 1540 (Fed.Cir.1986). The arguments in the briefs before this court have all been considered and none justifies any change in the board decision.

III.  *Conclusion*

Accordingly, the decision of the board is *affirmed.*

AFFIRMED.

COWEN, Senior Circuit Judge, dissenting.

I cannot agree with the court's decision. I believe that the crucial facts, most of which are omitted from the opinion of the majority, demonstrate that the rights guaranteed to petitioners by the Due Process Clause were violated, because they were not granted a pretermination hearing before they were discharged. A discussion of the constitutional rights to which petitioners were entitled is set forth in the recent decision of the Supreme Court in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). I am convinced that in holding that the denial of due process in this case was harmless error, the majority failed to follow the teaching of the Supreme Court in that case.

I.

Most of the facts upon which I rely are established by documentary evidence, copies of which are included in the appendix to this dissent. Except for immaterial differences in dates, the facts pertinent to the cases of both petitioners are substantially identical, so that an account of the facts pertaining to the claim of Linda J. Darnell will suffice for both petitioners.

On August 7, 1981, petitioner Darnell received a form letter (App. Exhibit 1) from the Department of Transportation, Federal Aviation Administration (FAA), dated August 6, 1981, and signed by the Facility Chief at Andrews Air Force Base Control Tower, Camp Springs, Maryland. The letter stated that the chief proposed to terminate petitioner's position as an air traffic control specialist for participation in an illegal strike ("a crime for which a sentence and imprisonment can be imposed"), and

for being AWOL. The letter gave notice that the material relied on to support the action was available for review at the Control Tower, and stated that petitioner had a right, within 7 calendar days after receipt of the letter, to reply personally, in writing or both, and furnish affidavits or other documentary evidence in support of her answer. The letter did not use the facility address in Camp Springs, Maryland, as the return address for the reply. Instead, the return address shown on the notice was the address of the Eastern Region of the FAA in Jamaica, New York, hundreds of miles away.

On August 11, 1981, petitioner responded to the notice by letter (App. Exhibit 2), which was received in the Jamaica, New York office of FAA on August 17, well within the 7–day reply period. The reply requested (1) an extension of time in which to file a written answer to the notice of proposed action; (2) copies of the materials relied on to support her proposed removal, and (3) an extension of 20 days time after receipt of the materials to personally answer the charges. The reply also stated: "There is no basis to the charge that I have committed a crime for which a sentence of imprisonment may be imposed."

On August 11, 1981, petitioner sent a written request (App. Exhibit 3) to the Washington office of the FAA, under the Freedom of Information Act, for three categories of information. The request stated that the information was needed by petitioner because of the disciplinary proceedings that had been initiated against her. She stated that if the charges for a search and for the copies she needed could not be waived, she would pay reasonable charges. The record before us does not indicate that there was any response to this request.

Petitioner's reply to the charges, timely received in the Jamaica, New York, office on August 17, 1981, was not forwarded to and received by the Camp Springs facility until August 20, 1981. In the meantime,

by form letter (App. Exhibit 4) dated August 18, 1981, signed by the Facility Chief, petitioner was notified of her removal. The letter stated that the chief had given full consideration to the fact that petitioner had made no oral or written reply, and that the evidence fully supported the charges and warranted petitioner's removal. The letter, referred to herein as the initial decision, also showed the Jamaica, New York address as the return address for replies. Apparently the chief had not seen and did not know that petitioner had replied to the proposed action by letter to the New York address.

On August 22, 1981, petitioner Robert Martinkovic and another air traffic controller delivered an unsigned letter (App. Exhibit 5) to the Camp Springs Facility. The letter stated that the responses to the letters proposing the removal of several air traffic controllers had not been received at the facility, because of the slow processing of the replies by the Eastern Region of the FAA in Jamaica, New York. In her handwritten note on this letter, the chief stated that there would be no response since the letter from Martinkovic had been received after the issuance of the initial decisions in which petitioners were terminated.

After petitioner's initial reply of August 11, 1981 had been forwarded to Camp Springs from Jamaica, the Facility Chief issued her final decision (App. Exhibit 6) in a letter dated August 21, 1981. The letter stated that petitioner's reply requesting additional time to respond had been received, but that since the request had not been received until after the end of the 7–day period, the removal decision of August 18 had been issued. This letter further stated: "However, we have carefully considered your request and find no reason to alter our decision." This letter, referred to herein as the final decision of the Facility Chief, used the Camp Springs, Maryland return address for the first time in the correspondence between the parties.[1]

---

1. Petitioner Martinkovic's notice of proposed removal was sent August 10 and received by him August 12. His reply was sent August 14, and

received at Jamaica, New York August 18. It was received at Camp Springs and rejected on

## II.

In *Loudermill*, the Supreme Court prescribed the minimum requirements of a pretermination hearing as follows:

> The essential requirements of due process * * * are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. See Friendly, "Some Kind of Hearing," 123 U.Pa.L.Rev. 1267, 1281 (1975). The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. See *Arnett v. Kennedy*, 416 U.S. [134] at 170–171, 94 S.Ct. [1633] at 1652–1653 [40 L.Ed.2d 15 (1974)] (opinion of POWELL, J.) * * *.

(470 U.S. at 546, 105 S.Ct. at 1495.)

It is implicit in the Court's decision that the employee's constitutional right to respond to a proposed dismissal must be a meaningful opportunity and one which receives the consideration of the decision maker. That much is clear from the Court's observation in *Loudermill*, as follows:

> Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect.

(*Id.* at 543, 105 S.Ct. at 1494.)

When the quoted pronouncements of the Supreme Court are applied to the facts of this case, it is plain that each petitioner was denied "an opportunity to present his side of the story" or to invoke the discretion of the Facility Chief (the decision maker) before being terminated. Although the petitioners sent timely responses to the return address shown on the notices, the Facility Chief terminated them without seeing the responses in the mistaken belief that they had made no oral or written reply. The delay in the decision maker's receipt of the replies was due to the slow processing of the replies by the Eastern Region of the FAA and was not the fault of petitioners.

As indicated above, petitioners' responses consisted almost entirely of requests for extensions of time to answer the charges with the aid of documents they hoped to obtain. After their replies had been forwarded from Jamaica, New York, to the Facility Chief, she should have realized that the letter terminating petitioners had been erroneously issued. At that time, she could have rescinded the removal actions and granted petitioners' requests to reply in person. Instead, the Facility Chief denied the requests in a decision, which I think was nothing more than a perfunctory reiteration of her erroneous conclusion that petitioners had failed to submit oral or written replies within the required 7–day period.

It is true that the final decision contained the statement that after careful consideration of petitioners' requests, the chief had found no reason to alter the decision terminating them. However, I would hold that this statement did not remedy the denial of due process. The statement was part of a printed form (App. Exhibit 6), which had been prepared long before, and when the final decision was made, the chief did not have petitioners' answers to the charges, which they would have submitted if the chief had rescinded the removal actions and granted them an oral hearing. Consequently, except for petitioners' assertions that they had not committed a criminal offense, there was nothing for the Facility Chief to consider—nothing to "invoke the discretion of the decision maker"—except the requests for extensions of time. By that time, petitioners had already been fired (App. Exhibit 4) because of the chief's erroneous belief that they had not responded within the 7–day period. Thus, all the circumstances indicate that the final deci-

August 25. The removal notice was sent August 21 and received by Martinkovic on August 25.

sion was based mainly, if not entirely, on that erroneous assumption.

The net result of the documentary evidence discussed above is that petitioners were denied the minimum requirements of the due process to which they were entitled under the holding in *Loudermill.*

### III.

Although the majority holds that the denial of a pretermination hearing in these cases was harmless error, it is my opinion that the harmful error rule, which is codified in 5 U.S.C. § 7701(c)(2)(A) and 5 C.F.R. § 1201.56(c)(3), does not apply to the denial of due process in this case.

In the first place, the majority bases its conclusions on *Cornelius v. Nutt,* 472 U.S. 648, 105 S.Ct. 2882, 86 L.Ed.2d 515 (1985) and *Smith v. United States,* 789 F.2d 1540 (Fed.Cir.1986)—two decisions which are inapposite.

In *Nutt,* the Supreme Court held that the harmful error rule does not permit an arbitrator to overturn agency disciplinary action on the basis of a significant violation of the collective-bargaining agreement that is harmful only to the union. The Supreme Court also upheld the interpretation by the Merit Systems Protection Board that the rule requires the individual employee to show error that causes substantial prejudice to his individual rights. However, the constitutional issue before us was in no way involved in *Nutt.* It was never raised by the parties, nor was it considered or even mentioned in the Supreme Court's decision.

*Smith v. United States* is even less pertinent. The controlling facts on which that decision was based do not bear even a remote resemblance to the facts in this case. In contrast to the facts before us here, the court's decision in *Smith* shows that his union representative made an oral reply to the agency's deciding official, and the court found that there was nothing of record to indicate that Smith attempted to present, or that he was prevented from presenting, either an oral or a written reply to the deciding official. The court also found that Smith had failed to avail himself of his statutory right to answer orally, and that he made no effort to obtain a Step 1 hearing at which he might be present. The court concluded: "No basis exists for Smith's assertion respecting constitutional due process." 789 F.2d 1541–42.

Secondly, the majority declares that since none of the defenses which petitioners presented at the *de novo* hearing before the Merit Systems Protection Board was legally sufficient, the premature issuance of the removal letters was harmless error which would not have affected the agency's decision. The majority then moves from this premise to the conclusion that since petitioners did not prevail in the MSPB hearing, none of petitioners' defenses was a defense which might have "invoked the discretion of the decisionmaker." In my opinion, these conclusions ignore the teaching of *Loudermill* that the tenured employee who is denied due process is not required to establish that if he had been granted a proper pretermination hearing, his presentation would have met with "certain success." Specifically, the Supreme Court stated that the employee's "right to a hearing does not depend upon a demonstration of certain success." *Id.* 470 U.S. at 544, 105 S.Ct. at 1494.

For that proposition, the Supreme Court cited *Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978), in which the Court declared:

Because the right to procedural due process is "absolute" in the sense that it *does not depend upon the merits of a claimant's substantive assertions,* and because of the importance to organized society that procedural due process be observed, *see Boddie v. Connecticut,* 401 U.S. 371, 375 [91 S.Ct. 780, 784–85, 28 L.Ed.2d 113] (1971); *Anti-Fascist Committee v. McGrath,* 341 U.S. [123] at 171–72 [71 S.Ct. 624, 648–49, 95 L.Ed. 817 (1951)] (Frankfurter, J., concurring),

we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury. (Emphasis supplied). [Footnote omitted.]

## IV.

For the reasons stated, I would vacate the decision of the Merit Systems Protection Board and remand the case, with instructions to the agency to restore petitioners to their former positions and to grant them back pay as provided by law.

## APPENDIX

## EXHIBIT 1

**DEPARTMENT OF TRANSPORTATION**
**FEDERAL AVIATION ADMINISTRATION**

August 6, 1981

**EASTERN REGION**
FEDERAL BUILDING
JOHN F. KENNEDY INTERNATIONAL AIRPORT
JAMAICA, NEW YORK 11430

Linda J. Ross

3331 Bentley Square Drive, #1

Temple Hills, MD 20748

Dear Ms. Ross:

This is notice that I intend to remove you from your position of Air Traffic Control Specialist, GS-2152-__9/04__, $__18,585__ per annum at the Andrews AFB Control Tower, Camp Springs, MD. The reasons for the proposed action are:

Reason 1: Violation of 5 U.S.C. 7311, which states in pertinent part, "An individual may not accept or hold a position in the Government of the United States . . . if he . . . participates in a strike against the Government of the United States . . ."; and 18 U.S.C. 1918, which makes participation in a strike against the Government of the United States a crime for which a sentence of imprisonment can be imposed.

Specification: Beginning at approximately 7 A.M. EDT, on August 3, 1981, a nationwide strike by air traffic controllers occurred. Beginning at 4:00 PM, on August ____04____, 1981, when you failed to report for duty, until the present, you participated in a strike against the United States Government.

Reason 2: Unauthorized Absence

Specification: Beginning first at the 4:00 PM EDT to __12:00 AM EDT__ shift on August __04__, 1981, you failed to report for your scheduled tour of duty. On August____03____, 1981, you were sent a telegram that an illegal strike was in progress, and that you must return to duty for your regularly scheduled shift. You failed to return to duty, and instead remained absent without authorization.

The material relied upon to support this proposed action is available for review at____Andrews AFB Control Tower, Camp Springs, MD____. If you wish to review this material, please contact____Charlesca Neugebauer____:

## APPENDIX—Continued

The foregoing action constitutes a strike against the government prohibited by 18 U.S.C. 1918, and 5 U.S.C. 7311. This gives me reasonable cause to believe you have committed a crime for which a sentence of imprisonment can be imposed. Therefore, you may reply to this notice personally, in writing or both, and furnish affidavits and other documentary evidence in support of your answer to me, within 7 calendar days after you receive this letter. In making a reply you have the right to be represented by an attorney or other representative. As soon as possible after your reply is received, or after the expiration of the 7-day limit if you do not reply, I will issue a written decision on the proposed removal.

_Charlian Neugebauer_

**Facility Chief**

**Andrews Tower**

P31 5609722

RECEIPT FOR CERTIFIED MAIL

NO INSURANCE COVERAGE PROVIDED—
NOT FOR INTERNATIONAL MAIL
(See Reverse)

SENT TO Linda J. Rose
STREET AND NO 3331 Huntley Sq. Dr. T
P.O. STATE AND ZIP CODE Temple Hills Md. 20714

AUG 7 1981 MD

EXHIBIT 2

11 August 1981

Department of Transportation
Federal Aviation Administration
Eastern Region, Federal Building
John F. Kennedy International Airport
Jamaica, New York   11430

Re:  Linda J. Rose

## APPENDIX—Continued

Dear Ms. Neugebauer:

This is to request an extension of time in which to file a written answer to the notice of proposed action against me for the reasons stated below.

First, there is no basis to the charge that I have committed a crime for which a sentence of imprisonment may be imposed. Therefore, the crime exception to the rule set forth in 5 U.S.C. S.7513, which requires that I be given a thirty (30) day advance notice of this proposed action, is inapplicable.

I also understand that even if the crime exception to the 30-day rule is invoked, the controlling criterion is that I am entitled to a "reasonable time," (which may not be less than seven days) in which to file my answer, 5 U.S.C. S.7513(b)(2). I do not feel that, under the circumstances that apply, seven days is a reasonable time for filing a response.

I request that copies of all the materials relied on by the FAA to support its proposed action be sent to me. By separate letter to the Freedom of Information Office of the FAA, I am also requesting disclosure of all notices of proposed actions issued since January 1, 1978, and between January 1, 1969, and January 1, 1971. As I am entitled to review all of the materials relied on by the FAA to support its proposed action, see 5 C.F.R. S.752.404, I request that I be given at least 20 days from the receipt of these materials to answer personally the charges.

I hereby designate Mr. Michael W. Fermon as my representative in this proposed action. Please send copies of all communications in this action to:

> Mr. Michael W. Fermon
> P.A.T.C.O.
> 1455 Veterans Highway
> Hauppauge, New York 11788

Sincerely,

Linda J. Rose

EXHIBIT 3
11 August 1981

Freedom of Information Act Request
Freedom of Information Office (ATA-10)
Federal Aviation Administration
800 Independence Avenue, S. W.
Washington, D. C.  20591

To Whom It May Concern:

This is to request that the Federal Aviation Administration make disclosure and provide copies of certain materials available under the Freedom of Information Act, 5 U.S.C. Section 552, and the relevant regulations of the agency.

Specifically, I request disclosure to me of records held in any form that (a) document adverse personnel action proposals and final decisions by the FAA since January 1, 1978, and from January 1, 1969, through January 1, 1971; (b) indicate how FAA determines whether there is "reasonable cause to believe that a crime for which a sentence of imprisonment can be imposed" has been committed, within the meaning of 5 U.S.C. S.7511; (c) indicate how FAA interprets the meaning of the words "participates" and "strike" as found in 5 U.S.C. S.7311(3), and the authority for such interpretations.

APPENDIX—Continued

The FAA has initiated disciplinary proceedings against me, and access to the materials requested above is necessary for me to prepare an adequate defense. If any portion of this request is denied, I request a detailed statement of the reasons for the withholding and an index or similar statement of the nature of the documents withheld.

Pursuant to the Act, I request waiver of all charges, but if waiver is denied, I promise to pay reasonable charges incurred for an appropriate search and copying of these documents upon presentation of an invoice along with the finished documents.

If search and copying fee will exceed $25.00, please notify my representative, Mr. Michael W. Fermon, or myself at P.A.T.C.O., 1455 Veterans Highway, Hauppauge, New York, 11788. You may notify us whether this request will be granted at the address below. I would appreciate hearing from you as soon as possible so that I may begin to prepare my defense. Thank you for your assistance.

Sincerely,

Linda J. Rose
3331 Huntley Square Drive, T 1
Temple Hills, Md. 20748

EXHIBIT 4

## DEPARTMENT OF TRANSPORTATION
### FEDERAL AVIATION ADMINISTRATION

August 18, 1981

EASTERN REGION
FEDERAL BUILDING
JOHN F. KENNEDY INTERNATIONAL AIRPORT
JAMAICA, NEW YORK 11430

Linda J. Rose
3331 Huntley Square Dr, T 1
Temple Hills, MD 20748

Dear ___Ms. Rose___ :

My letter of ___August 6, 1981___ , informed you of a proposal to remove you from your position of Air Traffic Control Specialist, GS-2152-___9/01___ , $ ___18,585___ per annum at the ___Andrews AFB Control Tower, Camp Springs, MD___ . I have given full consideration to all the facts and circumstances in this case including:

( )     Your written reply of_____.

( )     Your oral reply of _____.

( )     Your written reply of_____, and/or oral reply of _____ _____, to the designee, his summary and recommendation.

(X)     You made no oral or written reply.

I have found that all reasons and specifications cited in the proposal letter are fully supported by the evidence and warrant your removal to promote the efficiency of the service. It is my decision, therefore, that you be removed effective_____ August 22, 1981_____ .

## APPENDIX—Continued

The enclosures with this letter explain your rights to appeal or grieve this action, and include an Appeal/Grievance Procedure Addendum, the MSPB Appeal Form and a copy of MSPB Regulations. In this connection you should know that the FAA has filed an Unfair Labor Practice (ULP) charge against PATCO for its role in the strike and is seeking to have the Union decertified. The case is now being processed by the Federal Labor Relations Authority and a determination that PATCO committed a ULP could impact on the processing of grievances under the PATCO/FAA agreement. If the Union is decertified and the agreement terminated, this avenue of appeal may not be available to you.

Sincerely,

*Charlesan Neugebauer*

CHARLESAN NEUGEBAUR

Chief, _____

Enclosures

EXHIBIT 5
August 19, 1981

Charlesan Neugebaur, Chief
Andrews Air Force Base Control Tower
Camp Springs, Maryland

Dear Ms. Neugebaur;

Certain individuals have received letters which indicate that your office failed to receive a timely response to your "proposed dismissal" correspondence.

The following is a copy of the individuals receipts with corresponding names as proof that the letters were sent within the seven day time parameter after receipt. The answer to the delay problem is due to slow processing in the Eastern Region of the FAA.

The individuals involved plan to have any future correspondence delivered by carrier with a receipt requested.

Received August 22, 1981 by SATCS Chris Matiz.
Delivered by David Noble and Robert Martinkovic
I did not respond to the attached letter as it was received after the decision letter was mailed.

*Charlesan Neugebaur*

APPENDIX—Continued

EXHIBIT 6

**DEPARTMENT OF TRANSPORTATION**
FEDERAL AVIATION ADMINISTRATION

DATE: August 29, 1981

IN REPLY
REFER TO:

SUBJECT:

Airport Traffic Control Tower
Andrews Air Force Base
Camp Springs, MD 20331

TO: Linda Rose

Your letter dated August 11, 1981 requesting additional time in which to respond to your notice of intended removal issued August 9, 1981 was received in this office on August 20, 1981.

Since substantially more than the allowed seven days had expired without any response from you, I issued the decision letter on August 18, 1981. The decision letter was forwarded to you by first class and certified mail August 18, 1981.

However, we have carefully considered your request and find no reason to alter our decision.

The material relied upon to support the decision is available for review at Andrews AFB Control Tower, Camp Springs, Maryland. If you wish to review this material, please contact me.

CHARLESAN NEUGEBAUER
Chief, Andrews Tower