Stephen S. BROCKMANN, Petitioner,

v.

DEPARTMENT OF the AIR FORCE, Respondent.

No. 92–3628.

United States Court of Appeals, Federal Circuit.

June 14, 1994.

---

Carl G. Goraleski, Grandjean & Goraleski, Dayton, OH, argued for petitioner.

Major David F. Brash, USAF, Trial Atty., Air Force Legal Services Agency, Arlington, VA, argued for respondent. With him on the brief was Lt. Col Norman F. Nivens, USAF, Chief, Civilian Personnel Branch, Air Force Legal Services Agency. Also representing respondent were William K. Oliver, Mary Mitchelson and David M. Cohen, Dept. of Justice.

Before NIES,* NEWMAN, and PLAGER, Circuit Judges.

NIES, Circuit Judge.

Stephen S. Brockmann appeals from the August 10, 1992, 54 M.S.P.R. 424, decision of the Merit Systems Protection Board (MSPB or Board), Docket No. CH–0752–92–0305–I–1 denying his petition for review of his removal from a civilian position in the Department of the Air Force. We affirm the decision of the Board.

## I.

Mr. Brockmann worked for the Air Force as a GS–0560–12 budget analyst, a position requiring a security clearance. On January 22, 1990, Mr. Brockmann filed a complaint with his local police department making several allegations concerning his employer. Mr. Brockmann contended that agents of the Air Force had surreptitiously attempted to enter his home, that concealed listening devices had been installed there, and that his observations of beams of light in his windows betrayed the use of laser surveillance devices. Mr. Brockmann also informed the police that he had attempted to counter the alleged laser surveillance by placing aluminum foil in his home's windows and baseboards. Following police notification to the Air Force, Mr. Brockmann's access to classified materials and restricted areas was temporarily suspended pending a reinvestigation of his security clearance eligibility. Contemporaneously, Mr. Brockmann directly accused several colleagues of tampering with the computer system in his office in order to make him look bad. He had made similar, unsubstantiated accusations three times in the past.

The Air Force notified Mr. Brockmann of its intent to revoke his security clearance on April 5, 1991, citing "conduct and behavior which raises concerns regarding your judgment and reliability, your refusal to undergo command requested medical evaluation to evaluate your behavior, and your refusal to sign AF Form 2587, Security Termination Statement." Mr. Brockmann responded by submitting the signed Security Termination Statement, a personal statement, and a professional psychological evaluation obtained from a private firm. The latter document provided two possible reasons for Mr. Brockmann's statements to the police department: either he was actually under surveillance or he suffered from a persecutory paranoid delusional disorder. Unpersuaded by the personal statement, and further concerned over Mr. Brockmann's reliability due to the evaluation, the Air Force notified Mr. Brockmann that his clearance was revoked effective August 16, 1991.

Because Mr. Brockmann's position required a security clearance, a notice proposing his removal issued on October 3, 1991. The Air Force agreed to postpone its decision regarding his removal until Mr. Brockmann completed an internal agency appeal of his security clearance revocation. Following the denial of this appeal, the Air Force removed Mr. Brockmann from his position on January 31, 1992.

Mr. Brockmann then appealed his removal to the MSPB. Mr. Brockmann sought to have the Board review the merits of the security clearance withdrawal. In an April 29, 1992, decision, the Administrative Judge (AJ) sustained the Air Force's termination. Citing *Department of the Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), the AJ held that the Board had no authority to review the merits of an agency's decision to revoke a security clearance. The AJ held that the MSPB could only satisfy itself that certain procedural steps satisfying minimal due process had been followed.

* Circuit Judge Helen W. Nies vacated the position of Chief Judge on March 17, 1994.

Based upon Mr. Brockmann's stipulation that "he was notified in advance of the agency's intent to revoke the security clearance, that the notice set forth the reasons for the proposed revocation, and that he was given the opportunity to respond to the notice," the AJ was satisfied that Mr. Brockmann had received minimal due process. The full Board denied Mr. Brockmann's petition for review, and this appeal followed.

## II.

In *Egan,* 484 U.S. at 518, 108 S.Ct. at 819, the Supreme Court considered the extent to which the Board, while reviewing an adverse action under Chapter 75 of the Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–454, 92 Stat. 1111 (codified, as amended, in various sections of 5 U.S.C.), may evaluate an agency security clearance decision. Interpreting the authority granted to the Board in 5 U.S.C. § 7513 (1982), the Court reasoned that:

> The Act by its terms does not confer broad authority on the Board to review a security-clearance determination. As noted above, the Board does have jurisdiction to review "adverse actions," a term, however, limited to a removal, a suspension for more than 14 days, a reduction in grade or pay, and a furlough of 30 days or less. §§ 7513(d), 7512. A denial of a security clearance is not an "adverse action," and by its own force is not subject to Board review. An employee who is removed for "cause" under § 7513, when his required clearance is denied, is entitled to the several procedural protections specified in that statute. The Board then may determine whether such cause existed, whether in fact clearance was denied, and whether transfer to a nonsensitive position was feasible. Nothing in the Act, however, directs or empowers the Board to go further.

484 U.S. at 530, 108 S.Ct. at 825–26.

With this appeal, Mr. Brockmann attempts to distinguish *Egan* by arguing that his actions leading to the security clearance revocation were less egregious than those of the *Egan* respondent, and that the Air Force's actions were somehow pretextual. Contrary to Mr. Brockmann's arguments, this case presents a straightforward application of *Egan.* The AJ completed the analysis permitted by *Egan* in its entirety, on the basis of Mr. Brockmann's own stipulations and admissions. Mr. Brockmann continues to argue the substantive aspects of the revocation of his security clearance, while admitting that the Air Force followed the required procedures. Under *Egan,* these admissions end the inquiry. *See Lyles v. Department of the Army,* 864 F.2d 1581, 1583 (Fed.Cir.1989).

Mr. Brockmann nevertheless argues that a decision of the Supreme Court subsequent to *Egan, Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), supports judicial review of the constitutional claims he claims to have raised relating to withdrawal of his security clearance. *Webster* concerned the termination of an employee by the Director of Central Intelligence pursuant to section 102(c) of the National Security Act, 50 U.S.C. § 403(c) (1982). The respondent brought claims under both the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706 (1982 & Supp.1986), and the First, Fourth, Fifth and Ninth Amendments. With respect to the statutory claims, the Court reasoned that the National Security Act's "extraordinary deference to the Director in his decision to terminate individual employees," *id.* at 601, 108 S.Ct. at 2052, indicated that the "agency action is committed to agency discretion by law" as provided in 5 U.S.C. § 701(a)(2). Removal under the National Security Act was thus judicially unreviewable under the APA's own terms.

The Court looked more favorably, however, upon the terminated employee's constitutional claims. The Court rejected the government's argument that the National Security Act precluded judicial review of constitutional claims, concluding that "[n]othing in § 102(c) persuades us that Congress meant to preclude consideration of *colorable* constitutional claims arising out of actions of the Director pursuant to that section . . . ." *Id.* at 603, 108 S.Ct. at 2054 (emphasis added). The Court remanded the case to the district court for further adjudication of the *Webster* respondent's colorable constitutional claims.

We cannot agree with Mr. Brockmann that *Webster v. Doe* impacts the reviewability of the substantive aspects of his removal in this case. The assertions made by Mr. Brockmann do not rise to the level of colorable constitutional claims that the Court contemplated in *Webster v. Doe*. Mr. Brockmann's constitutional claims which mention the First, Fourth, and Fifth Amendments are vaguely stated, undeveloped, and unsupported. His argument on this appeal that the adverse action was pretextual because of his known sexual preference—the argument that caught the Court's attention in *Webster v. Doe*—appears so peripherally in Mr. Brockmann's brief (in parentheses with no discussion) that it appears to be an afterthought. He further offered no rebuttal to the government's argument that no colorable claim of violation of a constitutional right of freedom of speech or association was made by Mr. Brockmann. *Cf. Hill v. Department of the Air Force*, 818 F.2d 874 (Fed.Cir.1987) (discrimination claim must be supported to the extent of a *prima facie* case in order to create a "mixed case").

We conclude that as Mr. Brockmann raised no colorable constitutional claim in terms of *Webster v. Doe*, the holding in *Egan* squarely controls the judicial reviewability of his appeal. Mr. Brockmann having stipulated that the standards set out in *Egan* were satisfied, the Board's denial of his petition for review must be affirmed.

AFFIRMED.

PAULINE NEWMAN, Circuit Judge, dissenting.

The ruling of the Supreme Court in *Department of the Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), bars judicial review, as well as review by the Merit Systems Protection Board, of the agency's grounds for withdrawal of Mr. Brockmann's security clearance when, as in *Navy v. Egan*, the grounds raise no colorable constitutional issue. In this case, however, the MSPB's ruling that constitutional issues can not be considered when security clearance is involved, even if the constitutional claim is colorable, deprived Mr. Brockmann of the opportunity to develop these issues, and the opportunity to obtain review thereof as authorized in *Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988).

*1.*

The Court held in *Navy v. Egan* that when procedural due process is accorded the employee by the agency, the MSPB does not have authority to review the substantive merits of the agency's decision to deny security clearance to the employee. The MSPB's review authority is limited to the process before the agency, as is the appeal to the Federal Circuit. Mr. Brockmann does not dispute that his removal was in accordance with agency procedures, that he received notice of certain charges, and that he had an opportunity to respond. The MSPB determined that he received procedural due process at the agency; I agree that the agency met the requirements of *Navy v. Egan*.

In *Navy v. Egan* the employee raised no substantive constitutional issues. Such issues were treated in *Webster v. Doe*, wherein Mr. Doe stated that his security clearance was revoked because of his sexual preference, and raised issues of the First, Fourth, Fifth, and Ninth Amendments. The Court in *Webster v. Doe* did not hold that review must be denied to constitutional issues when security clearance is involved, as the government now argues. Indeed, the Court held that colorable constitutional claims should be considered. *Id.*, 486 U.S. at 605, 108 S.Ct. at 2054. Thus I must dissent from the panel majority's endorsement of the refusal of the MSPB to consider any constitutional issue other than the "minimal due process", as the MSPB calls it, of *Navy v. Egan*.

Mr. Brockmann asserted before the MSPB that the agency's revocation of his security clearance was pretextual, and was based on his sexual preference, age, sex, and handicapping condition, and on whistleblower reprisal. He cited the First, Fourth, Fifth, and Ninth Amendments. The MSPB refused to consider any of the constitutional claims because they "are intertwined with the agency's decision to revoke his security clearance." Thus the MSPB received no evidence and made no analysis of Mr. Brockmann's constitutional claims. Although the panel majority now

accepts the government's argument that Mr. Brockmann's constitutional claims are not colorable, Mr. Brockmann had no opportunity to develop these claims in the proceeding before the MSPB. We do not know whether he could have established a constitutional claim had the opportunity been afforded.

*2.*

The MSPB held that constitutional issues can not be considered in MSPB review of an adverse employment action based on denial or revocation of an employee's security clearance. I can not agree that these constitutional claims, if colorable, are less subject to the review process of the Civil Service Reform Act than a claim that the employee did not receive due process. Actions taken under the Civil Service Reform Act are not thereby removed from the protection of the Constitution. The tribunals charged with review of actions taken under the Civil Service Reform Act are not handicapped when the issue is of constitutional dimension.

*Navy v. Egan* did not raise the issue of an asserted pretextual revocation of security clearance. Mr. Egan had petitioned the MSPB to decide whether his concealed criminal past warranted the Navy's refusal to grant him a security clearance. In contrast, Mr. Doe asserted that the CIA's withdrawal of his security clearance was based upon his disclosure of his sexual preference. The Court in *Navy v. Egan* held that the MSPB's review authority was limited to whether procedural due process had been met by the agency. The Court in *Webster v. Doe* recognized that the grant of discretion to the federal employer in national security matters does not make unreviewable the violation of constitutional rights.

The *Navy v. Egan* and *Webster v. Doe* decisions are not differentiated by simply distinguishing the National Security Act[1] from the Civil Service Reform Act, as the government now suggests; or by distinguishing review of constitutional issues under the

Administrative Procedure Act from review under the Civil Service Reform Act, as the panel majority holds. In discussing the "sensitive and inherently discretionary" nature of the executive's national security authority, *Navy v. Egan*, 484 U.S. at 527, 108 S.Ct. at 823, the Court did not eliminate constitutional protection for federal employees. It is well established that certain agency actions are unreviewable on their merits because Congress has committed them to agency discretion, *Lincoln v. Vigil*, — U.S. —, —, 113 S.Ct. 2024, 2031, 124 L.Ed.2d 101, 111 (1993). Procedural irregularities and constitutional violations are exceptions to this rule, as the Court confirmed in *Webster v. Doe*.

The difference between *Webster v. Doe* and *Navy v. Egan* flowed from the assertion of constitutional claims other than due process in *Webster v. Doe*, whereas none was asserted in *Navy v. Egan*. The Court did not distinguish between constitutional violations that were reviewable and those that were not. As in *Navy v. Egan*, the Court in *Webster v. Doe* held that courts may not review the substantive merits of security-based personnel actions. However, in *Webster v. Doe* the Court held that colorable constitutional claims arising from the termination of Doe's employment were not insulated from judicial scrutiny on the ground of national security. This holding was made despite the statutory grant to the Director of Central Intelligence of broad discretion in employment matters.

*3.*

The government argues that constitutional claims other than due process can not be reviewed by the MSPB when an adverse employment action based on security clearance is appealed through the appeal procedures of the Civil Service Reform Act. I do not believe that this statutory path of appeal was intended to, or can, mean that those

---

**1.** The National Security Act grants the Director "extraordinary deference", *Webster v. Doe*, 486 U.S. at 601, 108 S.Ct. at 2052, in employment termination decisions:

**50 U.S.C. § 403(c).** . . . the Director of Central Intelligence may, in his discretion, termi-

nate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States. . . .

federal employees who are subject to the Civil Service Reform Act are denied the protection of the Constitution, while federal employees subject to the National Security Act are not.

It would be anomalous indeed if a federal employee who was terminated in violation of constitutional rights was permitted review despite the National Security Act, wherein personnel actions are consigned to the Director's discretion, but not under the Civil Service Reform Act with its elaborate employee safeguards. I can discern no such intent in the design of the federal employment laws. An agency does not have discretion to violate the Constitution, and Congress can no more confer such discretion upon an agency than it can enact unconstitutional legislation.

In *Navy v. Egan* the Court determined that security clearance matters are committed to agency discretion, and therefore are unreviewable on appeal from an adverse action subject to the Civil Service Reform Act. However, the presence of a discretionary agency action no more precludes review of procedural irregularities and constitutional violations under the Civil Service Reform Act than it does under the Administrative Procedure Act. *See Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977) ("when constitutional questions are in issue, the availability of judicial review is presumed"); *Hondros v. United States Civil Service Commission*, 720 F.2d 278, 293 (3d Cir.1983) ("even those actions 'committed to agency discretion by law' are reviewable on grounds that the agency lacked jurisdiction, that the agency's decision was occasioned by 'impermissible influences,' or that the decision violates any constitutional, statutory, or regulatory command.")

The contrary holding in Mr. Brockmann's case should not be endorsed by this court. The action of the MSPB in refusing to consider constitutional claims requires our considered attention, not a casual whitewash. As a minimum, we should consider whether the constitutional principles affirmed in *Webster v. Doe* apply to federal employees in actions assigned to the MSPB and the Federal Circuit for review. I discern no "clear and convincing" evidence of congressional intent to foreclose such review. *Weinberger v. Salfi*, 422 U.S. 749, 761, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522 (1975).

*4.*

Before the enactment of the Civil Service Reform Act a federal employee had alternative paths of appeal of adverse employment actions. In *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), the Court held that the Civil Service Reform Act now provides the exclusive path of redress for most executive branch employees. It can not be assumed that Congress in enacting the Civil Service Reform Act intended to eliminate access of these executive branch employees to the protection of the Constitution when faced with an adverse employment action.

It can not be assumed that Congress intended that a pretextual termination of security clearance in violation of constitutional rights, and ensuing termination of employment, would become insulated from review because of the obligatory appeal to the Merit Systems Protection Board before judicial review can be had. Indeed, the Court in *Webster v. Doe* referred to "the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim". *Id.*, 486 U.S. at 603, 108 S.Ct. at 2053, citing *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 681 n. 12, 106 S.Ct. 2133, 2141 n. 12, 90 L.Ed.2d 623 (1986).

The MSPB explicitly denied its own authority to consider constitutional issues—an action strongly supported by the government. This denial has created a void of highly questionable sustenance. Constitutional issues can indeed arise in matters of federal employment, and have heretofore been considered in appeals under the Civil Service Reform Act. *See, e.g., Watson v. Department of Transportation*, 49 M.S.P.R. 509 (1991) (mandatory drug testing), *aff'd*, 983 F.2d 1088 (Fed.Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 2993, 125 L.Ed.2d 688 (1993); *Darnell v. Department of Transportation, Federal Aviation Administration*, 807 F.2d 943 (Fed.Cir.1986) (re-

quirements of due process clause), *cert. denied*, 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987); *Hambsch v. Department of the Treasury, United States Secret Service*, 796 F.2d 430 (Fed.Cir.1986) (right to travel); *DiMasso v. Department of Transportation, FAA*, 735 F.2d 526 (Fed.Cir.1984) (self-incrimination).

Neither the Civil Service Reform Act nor *Navy v. Egan* supports the government's position that if a federal employee is terminated in violation of constitutional rights when security clearance is involved, the tribunals charged by statute with review of the employment action can not consider the constitutional violation.

### 5.

There is an old saw that hard cases make bad law. The panel majority makes much of certain unsympathetic facts recited by the government, although in accordance with *Navy v. Egan* the facts are not before us. Further, on the non-record before us, it is indeed possible to argue that Mr. Brockmann's constitutional claims are not colorable. His claims that mention the First, Fourth, and Fifth Amendments are vaguely stated, undeveloped, and unsupported. His argument that the adverse action was pretextual because of his known sexual preference—the argument that caught the Court's attention in *Webster v. Doe*—appears peripherally in Mr. Brockmann's brief, in parentheses with no discussion. He offered no rebuttal to the government's argument that no colorable claim of violation of a constitutional right of freedom of speech or association was made.[2] However, we do not know whether the issues are really as one-sided as they can be made to appear.

A claim is colorable if it has any basis in law or fact. *Myers v. United States Parole Commn.*, 813 F.2d 957 (9th Cir.1987) ("A claim is not colorable if it is factually unsupported, legally unsupported, or both"). Whether a claim is colorable frequently requires the finding of facts. *See, e.g., Callis v.*

*HHS*, 877 F.2d 890 (11th Cir.1989) (observing that "[w]hether [appellant's substantive due process claim] is a colorable constitutional claim is difficult to determine without the complete administrative record", and remanding for such determination); *Boettcher v. Secretary of HHS*, 759 F.2d 719 (9th Cir. 1985) ("Determining whether Boettcher's constitutional claim is colorable necessarily involves a review of its merits."); *Koerpel v. Heckler*, 797 F.2d 858 (10th Cir.1986) ("we agree that a review of the merits is necessary to determine whether a claim is colorable.") Mr. Brockmann has not yet had this hearing on the merits.

There is no way of determining on this record whether Mr. Brockmann's constitutional claims are colorable, for the MSPB refused to entertain them, and no record was permitted to be developed. The government's argument that no colorable claim of violation of a constitutional right was made by Mr. Brockmann is thus out of order, for the facts relevant to that issue were entirely excluded from the record by the MSPB. The panel majority's casual acceptance of the government's argument on its merits is equally out of order, for there is no record on which the panel majority could decide whether a colorable constitutional claim was made. Whether Mr. Brockmann can establish a constitutional claim does not turn on the prominence in which the claim appears in his brief at this stage of the proceedings, for the MSPB made neither findings nor conclusions on the issue, precluding its review on the merits.

If it is, as the MSPB held, beyond the jurisdiction of the MSPB to consider any constitutional claim raised in the context of revocation of security clearance, then it is beyond the authority of this court to decide, without a hearing and a record, whether such constitutional claim was colorable. *Cf. Hill v. Department of the Air Force*, 796 F.2d 1469, 1470–71 (Fed.Cir.1986) (Federal Circuit will determine whether a *prima facie* case of discrimination was made before the MSPB,

---

**2.** The panel majority has moved these comments into its opinion, adopting them as the findings of the court. However, absent a hearing, a record, findings, and a decision by the MSPB, the mak-

ing of findings by the Federal Circuit is not only improper but highly prejudicial, for it deprives Mr. Brockmann of any hearing whatsoever.

before transferring the case to the district court).

### 6.

For federal employees subject to the Civil Service Reform Act, judicial review is required to take the statutory path that starts with the MSPB. *See Fausto,* 484 U.S. at 454–55, 108 S.Ct. at 677–78 (limiting the paths of appeal available to employees under the Civil Service Reform Act). *Fausto* related to a concern earlier raised by Justice White in dissenting from a refusal to grant *certiorari*:

> In this case the United States Court of Appeals for the District of Columbia Circuit held that the comprehensive remedial scheme established by Congress in the Civil Service Reform Act of 1978 (CSRA) indicates a congressional intent to preclude judicial review under the Administrative Procedure Act of claims that could have been reviewed administratively under the CSRA. While eight other Courts of Appeals have reached a similar conclusion, the United States Court of Appeals for the First Circuit has held to the contrary. I would grant certiorari to resolve this conflict.

*Gray v. Office of Personnel Mgt.,* 475 U.S. 1089, 106 S.Ct. 1478, 89 L.Ed.2d 732 (1986) (citations omitted). Although it is unclear whether this conflict has been fully resolved, almost all of the regional circuits have held that the MSPB is the exclusive path of review, even for constitutional claims. *Compare Spagnola v. Mathis,* 859 F.2d 223, 229 (D.C.Cir.1988) (*en banc* ) ("While we decline to extend *Bivens* remedies to Hubbard and Spagnola, we do not suggest that the CSRA precludes the exercise of federal jurisdiction over the constitutional claims of federal employees and job applicants altogether.") *with Saul v. United States,* 928 F.2d 829, 843 n. 27 (9th Cir.1991) ("The D.C. Circuit differs from other circuits by permitting federal employees to vindicate their constitutional rights through suits against their supervisors and employing agencies for injunctive relief, but not for damages.")

In sum, the MSPB was incorrect in refusing to hear the constitutional claims raised by Mr. Brockmann. The safeguards confirmed in *Webster v. Doe* for actions involving security clearance must be respected in actions committed to the MSPB and this court. The panel majority has sustained the MSPB's ruling that constitutional claims will not be considered when security clearance is involved. I respectfully dissent.