Note: Pursuant to Fed. Cir. R. 47.6, this disposition
Is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

04-3131

JOSEPH COOKE,

Petitioner,

v.

SOCIAL SECURITY ADMINISTRATION,

Respondent.

_____

DECIDED:    December 22, 2004

_____

Before RADER, Circuit Judge, PLAGER, Senior Circuit Judge, and DYK, Circuit Judge.

RADER, Circuit Judge.

Appellant, Joseph Cooke, sought arbitration on the grounds that the Social Security Administration suspended him unjustly because a criminal proceeding had been commenced against him. In the Matter of Arbitration Between New Jersey District Office of the Social Security Administration and AGFE, Local Union 2369 Re: Joseph Cooke, PH-2003-R-0010 (Nov. 8, 2003) (Cooke). Because substantial evidence supports the arbitrator's decision that Mr. Cooke's indefinite suspension was for just cause and promoted the efficiency of the service, this court affirms.

BACKGROUND

The Social Security Administration employed Mr. Cooke in its Trenton office as a Claims Representative. Cooke, slip op. at 2. In October 2000, Mr. Cooke became a Union Representative. In that capacity he did not assist claimants as a Claims Representative. Id. Pursuant to a citizen complaint received in February 2002, the Office of the Inspector General for the SSA (OIG) conducted an audit of Mr. Cooke's electronic inquiries on the SSA computer system. Id. OIG found that Mr. Cooke made inquiries into the Detailed Earnings Query database, the subject of which was not part of his duties at the SSA. Id. OIG investigators interviewed the persons who were the subject of Mr. Cooke's inquiries and determined that he did not have permission to access their information. The OIG informed the United States Attorney's Office, which filed a criminal complaint against Mr. Cooke for nine violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, on December 13, 2002. On December 20, 2002, the SSA issued a proposal to suspend Mr. Cooke without pay seven days from his receipt of their proposal. Id. at 2-3. The proposal informed Mr. Cooke that he had seven days to respond with any reasons against commencement of the suspension. Id. at 3.

The proposal to suspend, although bearing the signature of Mr. Plantier, Operations Supervisor, was actually drafted by a Resource Specialist, Mr. Regan. Id. at 23. Mr. Regan sent out the proposal after discussing it with Mr. Plantier's supervisor because Mr. Plantier was unavailable. Id. Mr. Plantier became aware of the proposal after it was sent and testified that he agreed with the content of the proposal after reading it. Id. at 24.

04-3131                                    2

Mr. Cooke, through counsel, obtained an extension of time to respond to the proposal until January 23, 2003, at which point Mr. Cooke did not respond. Id. at 3. The SSA issued its decision to suspend Mr. Cooke on January 24, 2003. Id. at 4.

The Union filed a grievance on behalf of Mr. Cooke, which the SSA denied. Id. The Union then invoked arbitration proceedings, in which the arbitrator upheld the decision of the SSA to indefinitely suspend Mr. Cooke and dismissed his grievance. Id. at 26. Mr. Cooke timely appealed to this court and seeks to reverse the indefinite suspension and receive back pay because: (i) the SSA erroneously invoked the statutory "crime provision"; (ii) the SSA violated his due process rights as a result of the procedures used; and (iii) SSA did not properly consider the requisite Douglas factors in reaching the decision to suspend.

## DISCUSSION

This court reviews the decisions of arbitrators in grievances of federal employees under the same standard of review that applies to decisions of the Merit Systems Protection Board (Board). Giove v. Dep't of Transp., 230 F.3d 1333, 1338 (Fed. Cir. 2000). Accordingly, this court must affirm the decision of the arbitrator unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000); Giove, 230 F.3d at 1338.

I.

<u>Applicability of 5 U.S.C. § 7513(b)</u>

Where an agency proposes an adverse action to be brought against an employee, thirty days advance written notice must be given, "unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action." 5 U.S.C. § 7513(b)(1) (2000).

This court has stated:

> In order . . . to sustain an indefinite suspension, the agency must establish by a preponderance of the evidence that it had reasonable cause to believe the employee committed a crime for which imprisonment may be imposed. . . . [and] must prove that the suspension would promote the efficiency of the service. 5 U.S.C. § 7513(a) (1988). To show that a suspension promotes the efficiency of the service the agency must establish a nexus between petitioner's alleged acts of misconduct and the employee's job responsibilities.

<u>Pararas-Carayannis v. Dep't of Commerce</u>, 9 F.3d 955, 957 (Fed. Cir. 1993) (footnotes omitted). An agency may satisfy the nexus requirement by showing a loss of trust in the employee characterized by use of government property to carry on illegal acts. <u>See</u> <u>Sanders v. United States Postal Serv.</u>, 801 F.2d 1328, 1332 (Fed. Cir. 1986).

Mr. Cooke argues that the arbitrator erred in finding that the SSA properly invoked 5 U.S.C. § 7513(b)(1) (the crime provision) when it indefinitely suspended Mr. Cooke with less than thirty days notice. Mr. Cooke asserts that the SSA improperly relied on the criminal charges as a justification reason for his indefinite suspension when the crime provision may only be used to truncate the notice period. In addition,

Mr. Cooke challenges SSA's reliance on the crime provision at all because it had already completed its investigation.[1]

Contrary to Mr. Cooke's assertion, this court has held that the criminal charges may constitute the substantive basis for indefinite suspension without pay pending the outcome of the criminal proceedings, as long as the agency also shows that "the nature of the crime alleged relates to the employee's ability to perform his or her duties." Richardson v. United States Customs Serv., 47 F.3d 415, 419 (Fed. Cir. 1995); see also Pararas-Carayannis, 9 F.3d at 957. In this case, the record shows that the criminal charges stem from Mr. Cooke's unauthorized use of SSA records during employment. The record also shows that SSA supervisors testified that they had lost trust and confidence in Mr. Cooke. These aspects of the record establish the required nexus between the alleged criminal conduct and the employee's job responsibilities.

Further, Mr. Cooke argues that the SSA did not act in a timely manner in deciding to indefinitely suspend him, instead imposing the suspension after completion of the administrative investigation. Contrary to Mr. Cooke's contentions, indefinite suspension is appropriate pending the outcome of the criminal investigation. See Richardson, 47 F.3d at 419. Moreover, the SSA had not even begun an administrative

---

[1] Mr. Cooke also argues that because imprisonment was not the likely result of the charges brought against him, the crime provision should not have been invoked. The statutory language, however, only requires the crime to be one for which imprisonment "may be imposed." 5 U.S.C. § 7513(b)(1) (2000) (emphasis added). The charges brought against Mr. Cooke include imprisonment as a possible penalty. See 18 U.S.C. § 1030 (2000).

investigation.[2]  The SSA suspended Mr. Cooke shortly after filing of the criminal complaint.  Thus, SSA properly invoked 5 U.S.C. § 7513(b)(1).

II.     Due Process Inquiry

Mr. Cooke also argues that his right to procedural due process was violated because:  (i) the relevant agency officials had no discretion with regard to determining whether suspension would be imposed; and (ii) the agency official who drafted and issued the suspension proposal acted outside of his authority.  Mr. Cooke argues that the agency has an incorrect policy to impose indefinite suspension once criminal charges are filed against an employee regardless of the merits of any response.  Further, Mr. Cooke points to the procedure for issuing the proposal to suspend in this case, where an agency employee other than the proposing official sent out the proposal to suspend.

As the Supreme Court has instructed:

[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Matthews v. Eldridge, 424 U.S. 319, 335 (1976); see also Gilbert, 520 U.S. at 931-934 (applying Matthews factors to determine whether due process requirements were met where Government employee was indefinitely suspended without pay).

---

[2]      The initial investigation, which led to the criminal complaint was conducted by the Office of the Inspector General of the Social Security Administration ("SSA"), an independent arm of the SSA.  In the Matter of Arbitration Between New Jersey District Office of the Social Security Administration and AGFE, Local Union 2369 Re: Joseph Cooke, PH-2003-R-0010 (Nov. 8, 2003).

04-3131                                                     6

At the outset, although Mr. Cooke's interest is significant, this court has repeatedly upheld temporary suspensions without pay. See, e.g., Engdahl, 900 F.2d at 1579; Dunnington v. Dep't of Justice, 956 F.2d 1151 (Fed. Cir. 1992). More importantly, the Government interest outweighs Mr. Cooke's interest because of the need to retain the trust of the public, whose social security records may be viewed and changed by employees like Mr. Cooke. See Gilbert, 520 U.S. at 932 (upholding suspension without pay of police officer accused of felony after determining that government interest in preserving public confidence in police force was significant).

Nonetheless, "[o]ne thing the government must do [ ] is give employees it seeks to suspend the opportunity to challenge the alleged nexus between the crime of which they are accused and the efficiency of the government service." Engdahl, 900 F.2d at 1577. Here, the record shows that SSA afforded Mr. Cooke this opportunity. In response, Mr. Cooke merely challenged the denial of extensions of time to respond and the likelihood that his conduct would receive a jail sentence. Cooke, slip op. at 3-4. Contrary to Mr. Cooke's assertion that the responsible agency officials had no real discretion in determining whether to suspend, those officials determined properly that: (i) Mr. Cooke was charged with a crime for which a jail sentence can be imposed; and (ii) a nexus linked the charges to Mr. Cooke's employment. Id. at 15-16.

Finally, Mr. Cooke argues that a major procedural error marred the issuance of the proposal to suspend, namely the proposal issued before the responsible official even read it. Although Mr. Plantier, as the responsible official, neither drafted nor sent out the proposal, he testified that he later agreed with the content of the proposal. See Cooke, slip op. at 24. This court was faced with a similar situation in Darnell v.

<u>Department of Transportation, Federal Aviation Administration</u>, 807 F.2d 943 (Fed. Cir. 1986). In <u>Darnell</u>, petitioners challenged their removal on the basis that the agency issued their removal notices before receipt of their written replies. <u>Id.</u> at 944-45. This court determined that because their replies would not have had an effect on the decision to remove, premature issuance of the removal decision constituted harmless error. <u>Id.</u> at 946. That principle applies to this case as well. Although the proposal to suspend issued prematurely, that procedural defect is harmless error. Thus, this court detects no deprivation of procedural due process in this case.

### III. Consideration of the Douglas Factors

Mr. Cooke further argues that SSA did not conduct a proper analysis of the <u>Douglas</u> factors in imposing the penalty of indefinite suspension. <u>See Douglas v. Veterans Admin.</u>, 5 M.S.P.B. 313 (1981). This court has counseled that:

> Determination of an appropriate penalty is a matter committed primarily to the sound discretion of the employing agency. This court defers to an agency's choice of penalty unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.

<u>Brook v. Corrado</u>, 999 F.2d 523, 528 (Fed. Cir. 1993) (citations and internal quotations omitted). Further, in reviewing an agency's decision "arbitrators must apply the same substantive standards that the [Board] would apply if the matter had been appealed to it." <u>Id.</u> As such, it is proper to consider the framework of <u>Douglas</u>, where the Board set out several factors to be considered in determining whether the penalty imposed was reasonable. <u>Douglas</u>, 5 M.S.P.B. at 332. These factors are not exhaustive, nor will each factor be relevant in every case. <u>Id.</u> at 332-33.

The record reflects that the agency considered several relevant factors in the penalty determination, including the nature and seriousness of the offense, the effect of the conduct on the supervisor's confidence in the employee, the impact on the reputation of the agency, the adequacy of the notice given the employee about the rules, and mitigating circumstances. Mr. Cooke contends that his employment at SSA without problems for twenty-nine years deserved greater weight. However, the arbitrator found that Mr. Cooke's supervisors determined that other factors, specifically the seriousness of the offense and the effect on the agency's reputation, were the overriding factors. Cooke, slip op. at 18. Accordingly, the arbitrator did not err in determining that SSA considered the relevant factors and acted reasonably in imposing a penalty of indefinite suspension.

Therefore, after review of the record, this court discerns no error in the arbitrator's decision to dismiss Mr. Cooke's grievance. This court affirms.